## BROCK v. SOUTHERN RAILWAY' COMPANY.

1. PLEADINGS—REFERENCES.—It is bad practice to refer to an original pleading only by page or paragraph and number of lines, as subsequent copies, especially in the printed Brief, may not have the same numbering.

2. INTERPLEADER.—Section 143 of the Code of Procedure does not provide for interpleader where both claimants are parties to the action, but does not prevent an order of interpleader between parties under the equitable jurisdiction of the Court of Common Pleas.

3. IBID.—Under this equitable jurisdiction and the changes wrought by the Code of Procedure, a defendant in proper cases may obtain order requiring his codefendant and the plaintiff to interplead.

4. IBID.—COMMON CARRIER—CONFLICTING CLAIMS.—Plaintiff shipped cotton by railroad consigned to B., and drew draft on B., with bill of lading attached, which was protested for non-payment and returned. Plaintiff and B. both forbid the railroad company to deliver the cotton to the other, and each demanded delivery. Plaintiff then brought action against the railroad company and B., to require the former to deliver the cotton and B. to endorse the bill of lading. The railroad company, by answer and affidavits, disclaiming any interest in the cotton, and showing that there was no collusion on its part, it was *held* a proper case for an order requiring plaintiff and B. to interplead.

5. IBID.—KNOWLEDGE OF FACTS—DENIAL.—Knowledge of the facts by the railroad company before action brought would not bar it of the right to obtain order of interpleader, nor would its statement in its answer, that "this defendant submits to the court that neither of said parties, as the papers stand, is entitled to the possession of said cotton," coupled with its disavowal of any claim.

6. IBID.—LACHES.—In this case the railroad company had no adequate remedy at law, and having sought the order for interpleader at the first term after action brought, it used due diligence in obtaining it.

Before WATTS, J., Greenville, November, 1894.

Action by L. A. and T. H. Brock against Southern Railway Company and J. F. Burgiss. From an order of interpleader, obtained by the railway company, the plaintiffs appealed, alleging error to the Circuit Judge in his order upon six grounds:

"1. That this being motion for order of interpleader, in action already brought and pending, under section 143 of the Code, the defendant, Southern Railway Company, could not avail itself of said motion except 'before answer, upon affidavit that a person, not a party to the action, makes a demand for the same debt or property,' which was not the case here. 2. It appearing from the pleadings that the defendant, Southern Railway Company, was in possession of the property described in the complaint, and to which plaintiffs alleged they were entitled to the possession, before and at the time of the commencement of this action, and that defendant, Southern Railway Company, had full knowledge of all the facts alleged by plaintiffs before action brought, and with said knowledge refused to deliver said property to plaintiffs, thereby forcing them to bring this action, and it further appearing from the answer of said defendant that the title of plaintiffs to said property, as well as their right of possession thereto, was denied, it is submitted, his honor erred in granting defendant's motion, thereby depriving plaintiffs of their right of trial by jury upon the issues presented. 3. This being a motion for interpleader in action already brought, and to which both the Southern Railway Company and Jas. F. Burgiss were defendants, it is respectfully submitted, that the facts alleged in the affidavits

of the Southern Railway Company were not sufficient to entitle
it to the relief prayed for, in that said affidavits did not allege
that the action was pending and issue had not been joined.
That a person not a party to the action had made a demand
against it for the same property; and the order of his honor,
Judge Watts, was, therefore, without warrant or authority of
law.    4. Because the Southern Railway Company had an ade-
quate remedy at law against the consequences of the alleged
conflicting claims to the property in dispute.    5. Because the
defendant, Southern Railway Company, was not ignorant of
the rights of the claimants to this property.    6. Because the
defendant, Southern Railway Company, did not use due dili-
gence in making this application, it appearing that it waited
until after issue joined, and just a short time before the case
was called for hearing upon its merits."

Mr. *Jos. A. McCullough,* for appellant.

Mr. *T. P. Cothran,* contra.

September 3, 1895.    The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.    The plaintiffs brought this
action to recover the possession of ten bales of cotton in the
possession of the Southern Railway Company, and damages for
the detention thereof, to which the defendant, James F. Bur-
giss, was made a party, as claiming some interest in the said
cotton.    Omitting the allegations of the partnership character
of the plaintiffs and the corporate character of the defendant
company, the allegations of the complaint may be stated sub-
stantially as follows: 3. That the plaintiffs were the owners of
and entitled to the immediate possession of the said ten bales
of cotton.    (A) That plaintiffs, previous to the time stated,
agreed with the defendant, Burgiss, to pay for what cotton his
agent purchased in the town of Honea Path, and that he, Bur-
giss, would pay the plaintiffs the amount advanced, with ex-
press charges, and a quarter of one per cent. on the money
advanced.    Plaintiffs were to draw on the said Burgiss, with
bill of lading attached, for the amount advanced, with the ex-
penses aforesaid.    Burgiss agreed to honor said drafts, and

upon payment thereof, he would be entitled to the possession
of the bill of lading and the cotton, and not otherwise.   (B)
That, in pursuance of said arrangement, plaintiffs, on or about
the 9th day of February, 1894, furnished to the agent of said
Burgiss the money necessary to pay for said cotton, which was
delivered to the predecessor of the defendant company, at
Honea Path, for shipment to Greenville, where it was carried,
and is now there in the possession of defendant company, the
bill of lading for said cotton having been made out in the
name of said Burgiss at his special request.   (C) That plain-
tiffs, on the 9th of February, 1894, drew on said Burgiss for
the amount advanced by them and the expenses aforesaid, with
the bill of lading attached, which draft was duly protested for
non-payment, and returned to plaintiffs, together with the bill
of lading, which are now in the possession of plaintiffs.   (D)
Since that time plaintiffs have demanded of Burgiss that he
endorse the bill of lading, which he refused to do; and have
offered to turn over to said Burgiss the bill of lading if he
would pay to them the amount above specified, which he has
likewise refused to do.   Plaintiffs are also informed and believe
that said Burgiss has forbid the delivery of said cotton by de-
fendant company to the plaintiffs, "claiming now some interest
therein," which claim plaintiffs allege is unfounded; and said
Burgiss has also notified defendant company that if they deliver
said cotton to plaintiffs without his endorsement on the bill of
lading, he will hold said company responsible therefor.   4.
That on said 4th day of July, 1894, and previous thereto,
"plaintiffs having put the defendant, Southern Railway Com-
pany, in possession of all the facts herein stated, demanded of
said defendant the possession of said ten bales of cotton, pre-
senting therefor the original bill of lading, and making them
a tender of all charges for transportation and other expenses
incurred on account of said cotton; but they refused, and still
refuse, to deliver the same to the plaintiffs."   Wherefore judg-
ment was demanded: 1st.  That defendant, Burgiss, be required
to endorse the bill of lading, and do such other acts as may be
necessary to enable plaintiffs to get possession of the said cot-
ton.   2d.  For the possession of said cotton and damages for

the detention.    3d. For costs and for such other relief as to the court may seem proper.

The Southern Railway Company, by its answer, admits the allegations contained in paragraphs one, two, and four of the complaint; denies the allegations that plaintiffs have sustained any damage by reason of any unlawful acts of this defendant; and as to the allegations contained in the third paragraph of the complaint, this defendant says that it has not knowledge or information sufficient to form a belief as to the truth of such allegations, and demands strict proof of the same, "except that it admits to be true the statements contained in the last thirteen lines of subdivision B, and the last eight lines of subdivision D, with the exception of the statement: 'Which claim plaintiffs allege is entirely unfounded.'" These admissions *we suppose* relate to the shipment of the cotton at Honea Path, the making out the bill of lading in the name of Burgiss, the transportation of the cotton to Greenville, where it now is in the depot of defendant company, and the fact that said Burgiss had forbid the delivery of the cotton to plaintiffs, without his endorsement of the bill of lading.    We must, however, take occasion to say that this mode of pleading is very objectionable, as the reference to certain lines of a given paragraph in a complaint most probably relates to the lines of the *manuscript* copy, which do not correspond with the printed copy, which alone is before us.    But as these admissions in the answer, under the view which we take of the case, are not material, we only refer to this objectionable mode of pleading, for the purpose of preventing any repetition of it.

By way of defence, this defendant makes the following allegations substantially: 1st. That the cotton was delivered to the agent of their predecessor, at Honea Path, for shipment: "Consigned to James F. Burgiss, order notify Pelham Mills, Greenville, S. C.," and the agent issued therefor a regular bill of lading, which is now, as plaintiffs allege, in their possession. 2d. That said cotton is now stored in defendant's depot at Greenville, S. C.    3d. "That this defendant has been notified by both the plaintiffs and the defendant, J. F. Burgiss, not to deliver said cotton to the other of said parties; that it has no

means of determining the conflicting interests of said parties, and submits to the court that it should not be compelled so to do; that it has had no interest in the cotton whatever except the lien for freight that was due thereon, and said lien had been discharged by the plaintiffs' tender of freight and charges as alleged, and denies that it withholds possession of said cotton from either of said parties for any other reason than that it should not, at its peril, be the arbiter of their disputes." 4th. "That said defendant is ready at any time to deliver said cotton to whomsoever of said parties the court shall determine is entitled thereto." 5th. "This defendant submits to the court that neither of said parties, as the papers stand, is entitled to the possession of said cotton, and that it should not be mulcted in costs or damages when this state of affairs has arisen, not from any fault of this defendant, but from the mistake or negligence of the plaintiffs, or of the defendant, J. F. Burgiss."

The defendant, Burgiss, also answered, raising certain issues with the plaintiffs, which, not being pertinent to the appeal, need not be stated.

At the first term of the court after this action was commenced, a motion was made by the Southern Railway Company, before his honor, Judge Watts, after due notice, based upon certain affidavits annexed, for an order of interpleader, requiring the plaintiffs and defendant, Burgiss, to litigate between themselves the right to the possession of the property in dispute, and discharging the defendant company from all liability to either party, on its delivering the property or its value to such person as the court may direct. One of these affidavits was made by the resident agent of defendant company at Greenville, in which, after stating the facts set up in that defendant's answer, which need not be repeated here, expressly denies all collusion between the defendant company and either of the other parties. There was another affidavit of one of the attorneys for defendant company, that he had offered to deliver the cotton to plaintiffs upon their executing a bond indemnifying defendant company against the claims of defendant, Burgiss, which offer was declined. It was admitted at the hearing of the motion, that the attorney for plaintiffs had exhibited to the attorney for defend-

ant company a paper purporting to be a notice of protest (of
the draft we presume), containing these words, "Party paid
more for cotton than he was authorized to do." After hearing
these papers and argument of counsel, his honor granted the
following order: "It is ordered, that said motion be granted.
Further ordered, that the plaintiffs and the defendant, J. F.
Burgiss, litigate between themselves the right to the possession
of the property claimed in the complaint, and that the defend-
ant, Southern Railway Company, be discharged from liability
to either of said parties upon its delivery [of the property] de-
scribed in the complaint, or its value, to P. D. Gilreath,
sheriff, who is hereby appointed receiver of the same, to hold
until this suit is determined." From this order plaintiffs ap-
peal upon six grounds set out in the record, which will not be
repeated here, but which should be incorporated in the report
of this case.

The first and third grounds may be considered together, as
they both involve the point that there was error in granting
the order of interpleader, because not authorized by the
provisions of section 143 of the Code. The second para-
graph of that section, which is the only part of it that
relates to the subject of interpleader, reads as follows: "A de-
fendant, against whom an action is pending upon a contract,
or for specific, real or personal property, may, at any time be-
fore answer, upon affidavit that a person not a party to the
action, and without collusion by him, makes against him a de-
mand for the same debt or property, upon due notice to such
person and the adverse party, apply to the court for an order
to substitute such person in his place, and discharge him from
liability to either party, on his depositing in court the amount
of the debt or delivering the property, or its value, to such
person as the court may direct; and the court may, in its di-
rection, make the order." It is very obvious, from the terms
of that section, that it applies only to a case where the other
claimant is *"not a party to the action,"* and cannot be applied to
a case like the present, where both claimants are already par-
ties to the action. It is very manifest that if it should be held
that a defendant could only avail himself of the remedy by in-

terpleader in the mode prescribed by this section, it would be in the power of a plaintiff to deprive the defendant of such remedy, by making the rival claimant a party to the action, as was done in the present case. This, surely, cannot be permitted; for, as is said in 3 Pom. Eq. Jur., § 1329, in speaking of these special statutory provisions: "It is universally held that these statutes do not at all limit nor affect the equitable jurisdiction by suit; they merely furnish another special, cumulative, and concurrent remedy. The ordinary style of these statutes does not alter the settled doctrines concerning interpleader. The statutory remedy is a mere substitute for the equitable remedy by suit, in the kinds of actions to which it applies, and is governed by the same rules."

Now, prior to the abolition of the Court of Equity, and the establishment of the reformed procedure by the Code, a defendant who was sued in a case like the present, if he desired to avail himself of the remedy by interpleader, would have been compelled to file a bill of interpleader against both of the rival claimants, making the necessary allegations, and with proper prayer for relief; but since the change in the procedure, wrought by the Code, a separate action is not only unnecessary but improper, as the same result may be obtained by answer. For example, under the former system of pleading, if an action to recover possession of real estate was brought against a person in possession, who desired to protect himself by some equitable defence, he would have been compelled to file his bill in equity to enjoin the action at law until his equitable rights could be determined by the Court of Equity. Now, however, under the reformed procedure, such a course is not necessary, as it is well settled that a person may set up equitable as well as legal defences by his answer. Here the defendant company has, by its answer, claimed the remedy by interpleader, just as it would formally have done by a bill in equity; and the only question is, whether it has shown itself entitled to such remedy.

It seems to us that the pleadings, together with the affidavits upon which the motion is based, clearly make out a case for interpleader. Indeed, the allegations in the complaint itself,

show that the defendant company rightfully acquired the possession of the property in dispute, which it retains only because there are rival claimants to said property. The bill of lading, which is, at least, *prima facie* evidence of the right to receive the property, was made out in the name of one of the claimants, and it is now in the possession of the other claimants, *without endorsement*, and one of the prayers of the complaint is, that the person (the defendant, Burgiss,) in whose name the bill of lading was made out, may "be required to endorse the bill of lading for said cotton, and do such other acts as may be necessary to enable plaintiffs to get possession of said cotton." If there ever was a case for interpleader clearly made out, it seems to us this is one. The undisputed facts are, that the defendant company is in possession, rightfully acquired, of certain property, of which it makes no claim whatever, and, on the contrary, avers its readiness to deliver the property to the rightful owner, as to which the defendant company is in honest doubt, owing to the antagonistic claims of its codefendant and the plaintiffs, which it has no means of determining, and that defendant is not acting in collusion with either of said claimants.

We will next consider exceptions two and five, which both make the point, that as the defendant company "had full knowledge of all the facts alleged by plaintiffs before action brought," the defendant company had no right to the remedy by interpleader. In the first place, we do not think that it appears from the pleadings (and there is no evidence upon the subject) that the defendant had "full knowledge of all the facts alleged by the plaintiff before action brought," for there is no admission of the facts alleged as to the terms of the arrangement between the plaintiffs and Burgiss for the purchase of the cotton, which might throw light upon the relative rights of those parties. But even if defendant company had been *informed* by plaintiffs of all these facts, and was at the same time *informed* that these facts were disputed by Burgiss, as the pleadings show, what means had the defendant company of determining such dispute? That presents just such a case as calls for the remedy by interpleader.

The second branch of exception two is based upon the assumption, unfounded, as we think, that defendant company, in its answer, denied the title of the plaintiffs, as well as their right to the possession of the property in dispute. The only foundation which is claimed for this assumption is the following language in the fifth subdivision of paragraph four of the answer: "This defendant submits to the court, that neither of said parties, as the papers stand, is entitled to the possession of said cotton." In view of the patent fact that this defendant, in its answer, expressly disavowed any claim to said cotton, and averred its readiness to deliver the same to its rightful owner, it seems to us that the language just quoted cannot properly be construed as a denial of the claim of the plaintiffs. At most, it was only an averment of what the plaintiffs in their complaint impliedly admit—that neither of the parties, *as the papers stand*, is entitled to the possession of the cotton; which manifestly means nothing more than this, that as the bill of lading was made out in the name of one of the claimants, and the same was in the possession of the other, *without endorsement*, neither of the parties, *as the papers stand*, were entitled to demand possession; and that such language cannot properly be construed as a denial of the rights of either. Exceptions two and five are overruled.

Exception four makes the point that the defendant company had an adequate remedy at law against the consequences of the alleged conflicting claims to the property in dispute. What that remedy is, we are at a loss to conceive; and none has been suggested which seems to us adequate and proper. This exception is overruled. It only remains to consider the sixth exception, which makes the point that defendant having failed to use due diligence in making the application for the order of interpleader, it has forfeited its right to such remedy. We do not see any evidence of a want of diligence on the part of the defendant company. The application was made at the first term after the action was commenced, and we do not see how it could have been made sooner. This exception must also be overruled.

The judgment of this court is, that the order appewaled from be affirmed.