12719

WILBUR v. MORTGAGE LOAN CO.

(149 S. E., 262)

*Mr. John J. Murray,* for appellant,

*Messrs. Julian Mitchell,* and *Ernest L. Visanska,* for respondent,

August 14, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is a petition by T. S. Wilbur, a debtor of the South Carolina Loan & Trust Company, upon certain notes transferred to the Mortgage Loan Company (under the arrangement referred to in Ex Parte Fant, Receiver, 147 S. C., 167, 145 S. E., 34), asking that the Mortgage Loan Company be required to cancel said notes and return the collateral thereto pledged by him.

The South Carolina Loan & Trust Company closed its doors on December 16, 1926, and was taken over by the

State Bank Examiner, who was later appointed receiver. In the proceeding referred to in 147 S. C., 167, 145 S. E., 34, certain assets of the bank were transferred to the Mortgage Loan Company for the purpose of liquidating the affairs of the bank. This proceeding is fully explained in the appeal reported in 147 S. C.

At the time of the collapse of the bank, it held two notes of T. S. Wilbur: (1) A note dated December 13, 1926, due 90 days, for $1,400, secured by a pledge of certain stock of the People's National Bank and 10 shares of the Port City Bank; (2) A note dated December 13, 1926, due 90 days, for $500, without collateral, but indorsed by W. C. Wilbur.

Both of these notes were delivered to the Mortgage Loan Company under the arrangement referred to; and between the date of delivery and March 23, 1928, T. S. Wilbur by sundry payments upon the $1,400 note reduced the amount thereof, so that there remained due the sum of $261 on that date; nothing having been paid by him upon the $500 note. The collateral stock in the People's Bank was surrendered to T. S. Wilbur; the other collateral being retained.

The petitioner alleged, and offered testimony tending to show, that the $500 note was originally the joint obligation of T. S. Wilbur and W. C. Wilbur, but that in a subsequent settlement between them, the note was assumed by W. C. Wilbur as his personal obligation. This fact was put in issue by the respondent, but does not appear to have been passed upon by his Honor in his decree.

At the time of the closing of the bank, there were certain funds therein deposited by W. C. Wilbur as follows:

| | |
|---|---:|
| W. C. Wilbur, for W. C. Wilbur, Jr. .........$ | 126.11 |
| W. C. Wilbur, for Mary Summer Wilbur ..... | 130.73 |
| W. C. Wilbur and Martha M. Wilbur ........ | 56.07 |
| W. C. Wilbur ........................... | 32.78 |
| | $   345.69 |

The persons named were the minor children of W. C. Wilbur.

Shortly after the closing of said bank, on the 24th day of January, 1927, the said W. C. Wilbur drew separate checks against each of said accounts, payable to South Carolina Loan & Trust Company, aggregating $345.69 and supplemented the same by his personal check upon People's First National Bank of Charleston, dated 24th of January, 1927, in the sum of $154.31, payable to South Carolina Loan & Trust Company, aggregating $500, which he transmitted to the bank in settlement of the $500 note; in other words, he claimed the right to set off the bank's liability to him personally upon these deposits against his liability to the bank upon the $500 note.

The Mortgage Company accepted the check of $154.31 on the People's Bank and applied it to the $500 note, but refused to accept the other checks, denying W. C. Wilbur's right of set-off. The appeal turns upon the validity of W. C. Wilbur's claim of set-off; if it should be allowed, the $500 note will have been paid, and the petitioner, upon the payment of the balance due upon the $1,400 note, $261, which has been tendered and refused, will be entitled to a cancellation of both notes and a return of the pledged collateral; otherwise not.

The matter was heard by his Honor, Judge Townsend, upon the petition, the return, the traverse to the return, the reply to the traverse, and testimony taken before him. He filed a decree, dated April 25, 1928, denying the claim of set-off and rendering judgment against T. S. Wilbur for the balance of the $1,400 note, $261.09, with interest from March 22, 1926, and for the balance of the $500 note, $337-50 with interest from March 14, 1927, each at the rate of 8 per cent. per annum and with 10 per cent. attorney's fees. From this decree, T. S. Wilbur has appealed.

There was no testimony to the contrary, and we assume it to be true, that the $500 note became the personal obliga-

tion of W. C. Wilbur; that the funds on deposit were the personal funds of W. C. Wilbur, and were carried in the manner indicated for his convenience, and for the purpose of simplifying the handling of the same by separate designations; that this was money he deposited from time to time of his own accord for the purpose of utilizing it for the children's education, or any necessity that might arise; that he put it in the names of the children because he wanted to build the accounts up for them, and that he had entire control over the money; that the money could be withdrawn upon checks signed by him alone; that, as indicated by the withdrawals against each account, these deposits were not in the nature of a permanent fund which was to be allowed to accumulate, but were more in the nature of checking accounts for current uses.

His Honor Judge Townsend held that the deposits of W. C. Wilbur (indicated to have been made for the benefit of his children, respectively) constituted trust funds of which they were the beneficiaries, and that that which was due to them could not be used as a set-off by W. C. Wilbur against his liability upon the $500 note. If his Honor's premises are correct as to the deposits constituting trust funds, his conclusion very probably is inevitable; otherwise not.

The deposits were recognized as subject to the checks of W. C. Wilbur; the accounts were made up of deposits made and checks drawn by him; in one case the deposits were $437.24 and the withdrawals $381.17; in another, $1,046-11 and $938; in another, $1,040.73 and $910—showing that the deposits were not intended to be permanent or accumulating, but subject to the individual checks of W. C. Wilbur, *recognized by the bank as the depositor.* We are satisfied that the arrangement was merely one of convenience, and not intended as the establishment of a trust fund.

Probably the leading case on the subject is *Cunningham v. Davenport,* decided by the New York Court of Appeals

in 1895, reported in 147 N. Y. at page 43, 41 N. E., 412, 32 L. R. A. at page 373, 49 Am. St. Rep., 641. In that case it appears that one John Cunningham, having had, prior to 1881, certain funds on deposit to his credit in the Bowery Savings Bank of New York, in that year transferred said funds from his own account to a new account, entered on the books of the bank to the credit of "John Cunningham, in trust for Patrick Cunningham, his brother." Patrick Cunningham, the alleged beneficiary, died on April 14, 1890. The funds referred to remained intact from the date of the deposit to the 17th day of April, 1890, three days after the death of Patrick Cunningham, when John Cunningham surrendered to the bank his deposit book and had the account transferred to his own credit. The suit was by the administrator of Patrick Cunningham against John Cunningham for the recovery of the amount on deposit to the credit of said account and interest. In its opinion the Court reviewed and distinguished a number of the earlier New York cases, and quotes from the case of *Beaver v. Beaver*, 117 N. Y., 421, 22 N. E., 940, L. R. A., 403, 15 Am. St. Rep., 531, the following:

"It may be justly said that a deposit in a savings bank by one person of his own money to the credit of another is consistent with an intent on the part of the depositor to give the money to the other. But it does not, we think, of itself, without more, authorize an affirmative finding that the deposit was made with that intent, when the deposit was to a new account, unaccompanied by any declaration of intention, and the depositor received at the time a pass book, the possession and presentation of which, by the rules of the bank, known to the depositor, is made the evidence of the right to draw the deposit."

Judge Andrews, pointing out various motives that impel depositors to open accounts to the credit of third parties or fictitious persons, with no intention of divesting themselves of ownership, continues as follows:

"We are inclined to think that to infer a gift from the form of the deposit alone would, in the great majority of cases, and especially when the deposit was of any considerable amount, impute an intention which never existed, and defeat the real purpose of the depositor. The relation of father and son does not, in this case, we think, strengthen the plaintiff's case."

The opinion continues as follows:

"We think the reasoning of this opinion is equally applicable to a case presenting the question whether a trust is created by opening an account in the name of, or in trust for, a third party. The doctrine laid down by this Court in the previous cases, amounts to this: That the act of a depositor in opening an account in a savings bank in trust for a third party, the depositor retaining possession of the bank book, and failing to notify the beneficiary, creates a trust if the depositor dies before the beneficiary, leaving the trust account open and unexplained.

"If the intent can be strengthened by acts and declarations of the depositor in his lifetime amounting to publication of his intent, a more satisfactory case is made out; but it is not absolutely essential, in the absence of explanation, where he dies leaving the trust account existing.

"In the case at bar we have a state of facts in every way distinguishable from the cases heretofore passed upon by this Court. John Cunningham, the depositor, is alive, denying the trust, and seeking in his old age to hold his own money as against the administrator of his deceased brother, the beneficiary under this alleged trust.

"This case was tried at Special Term. The record does not contain the evidence, and the findings of fact are conclusive. The findings show, as already stated, that this was a transaction between John Cunningham and the Bowery Savings Bank; that the depositor first opened the account in his own name, then changed it to his own name in trust for his brother, then changed it back to his own name, three

days after the death of the alleged beneficiary; that the depositor at all times retained possession of the bank books representing these accounts until delivered up to the bank; that Patrick Cunningham, the brother, was not informed of the account; that John never received any money from Patrick; that John claims never to have intended to give the money represented by the account to Patrick, nor to have ever intended it for his benefit.

"Surely this is a full and complete explanation by the living depositor of his intentions in this matter. The learned trial Judge uses this language in his opinion, viz.; 'An intention not to give it to his brother is inconsistent with his act and the form of his deposit, and his evidence is insufficient, to my mind, of what would otherwise be the legal effect without some explanations of the reasons for making the deposit in the form he did.'

"We think it was quite sufficient for the depositor to state, as he did, that he did not intend to create a trust, and never intended to give his brother the money. He was not called upon to disclose his reasons for opening the account in trust for his brother. We have presented here the case of a man who takes his own money, and deposits it to his own credit in trust for another, making no disclosure or publication of the trust, treating it apparently as a mode of transacting his own business, and then survives the proposed beneficiary.

"We are of opinion that such a transaction does not create a trust. There are no sufficient circumstances or declarations from which a Court of equity can spell out a trust, even under the liberal rule as to the creation of trusts in personal property, which holds no formal or written agreement or particular form of words necessary.

"The death of the beneficiary three days before the trust account was closed is urged as a reason why this alleged trust should be sustained. It is a circumstance of no mo-

ment, for the opening of the account, as now explained, did not create a trust."

In *Walsh v. Bank,* 106 Misc. Rep., 628, 176 N. Y. S., 418, it was held that a deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during lifetime of depositor, but is a tentative trust merely, revocable at will until depositor dies or completes gift in his lifetime by some unequivocal act or declaration, such as delivery of passbook or notice to beneficiary.

In the case of *In re Beaman's Estate* (Sur.), 163 N. Y. S., 800, it was held that a deposit in the depositor's name in trust for another of his own funds, standing alone, does not establish an irrevocable trust during his lifetime, but tentative only, unless it becomes irrevocable by death or some definite act. To the same effect are the cases of *In re Reynolds' Estate* (Sur.), 163 N. Y. S., 803; *In re Beagan's Estate,* 112 Misc. Rep., 292, 183 N. Y. S., 941.

In *Blackstone Canal Nat. Bank v. Oast,* 45 R. I., 218, 121 A., 223, it is held that the form of a deposit is not conclusive as to whether it was a trust fund for the benefit of another, but the test is the intention with which the deposit was made.

In *Frank v. Heimann,* 302 Mo., 334, 258 S. W., 1000, it was held that a father's statements, when opening an account, naming himself as trustee for his daughter, and subsequently that he wanted to build up a fund for his infant daughter, that it would be a nest egg for her, did not refer to a single specific deposit, but to a fund to be accumulated in the future or then accumulating, and hence to create merely an executory, revocable trust.

In *Willard v. Willard,* 103 Misc. Rep., 544, 170 N. Y. S., 886, it was held that, where a woman deposited $500 in bank, in her own name, in trust for her nephew, she had the right to withdraw the entire fund, and thus destroy the tentative trust in her lifetime, if she desired.

In the case of *In re Wilkins' Will,* 131 Misc. Rep., 188, 226 N. Y. S., 415, it was held that the form of checking account is not in itself sufficient to establish depositor's intent to create trust for another.

In the case of *In re Hall's Estate,* 154 Cal., 527, 98 P., 269, it was held that, where the evidence was insufficient to establish a gift *inter vivos* of money deposited in bank, in order that the depositor or the bank might be declared a trustee thereof, the money must have been deposited with intent to create a trust.

In *Hemmerich v. Union Dime Sav. Inst.,* 205 N. Y., 366, 98 N. E., 499, Am. Cas., 1913-E, it was held that whether a trust is created in a savings bank deposit, and, if so, the terms of the trust, depend upon the intention of the depositor. To the same effect is *Thomas v. Bank,* 73 Misc. Rep., 308, 130 N. Y. S., 810.

In *Cleveland v. Hampden Sav. Bank,* 182 Mass., 110, 65 N. E., 27, it was held that one making a deposit in a bank, declared in the bank book to be in trust for another, does not thereby create a trust, if he had not the intent of doing so.

In *People's Sav. Bank v. Webb,* 21 R. I., 218, 42 A., 874, it was held that no trust is created, as a conclusion of law, by a deposit in a savings bank in the depositor's own name as trustee for his son, in the absence of evidence of any intent on his part to do so except in case of his death.

In *Bartlett v. Remington,* 59 N. H., 364, it was held that a fund deposited by A in a savings bank in trust for B, who is neither a party nor privy thereto, A retaining its title and control, is held by A upon an executory trust.

In *Marcy v. Amazeen,* 61 N. H., 131, 60 Am. Rep., 320, it was held that the fact that one deposits his money in a bank in another's name, but subject to the depositor's order, without notice to the other party, and retains con-

trol of the fund, is not sufficient evidence of an intention to create a trust.

In *Weber v. Weber,* 58 How. Prac. (N. Y.), 255, it was held that the mere fact that a father deposited his earnings in a savings bank, in his own name, as trustee for·his children severally, in sums to draw the largest interest, held not to create such a trust in their favor as to enable them to take the same from his control.

·In *Beaver v. Beaver,* 117 N. Y., 421, 22 N. E., 940, 6 L. R. A., 403, 15 Am. St. Rep., 531, it was held that a trust cannot be implied from a mere deposit in a bank by one person of his own money in the name of another.

In the case of *In re.Totten,* 179 N. Y., 112, 71 N. E., 748, 70 L. R. A., 711, it was held, quoting syllabus : "An irrevocable trust is not .established by the deposit of one's own funds in his own name is a savings bank in trust for another, where the depositor retains possession of the deposit book and control of the deposit, does not notify the beneficiary of the act, and deals with the account as his own, withdrawing it entirely in his lifetime."

A·very nice question would arise, if it could be held that the deposits were to the credit of W. C. Wilbur as trustee, whether, notwithstanding that relation, the trustee could still claim the right of set-off. The question arose in the case of *Hanson v. Bank of La Grange* (Ga. App.), 147 S. E. 124, where it was decided in favor of the right, upon the ground that, as the trustee was personally responsible to the beneficiary, it was to the latter's advantage that the set-off be allowed; in the one case he would get 100 per cent. of his money by recourse to the trustee, while in the other he would get only a percentage out of the insolvent estate. See, also, the case of *Funk v. Young,* 138 Ark., 38, 210 S. W., 143, 5 A. L. R., 79, and annotation. As we find the facts different in the case at bar, it is not necessary to express an opinion upon this possible phase of some other case.

The judgment of this Court is that the decree appealed from be reversed, and the case remanded for further proceedings consistent herewith.

MESSRS. JUSTICES BLEASE, STABLER, and CARTER, and MR. ASSOCIATE JUSTICE GRAYDON, concur.