14330

ELLIOTT *ET AL.* v. GREER PRESBYTERIAN CHURCH

(186 S. E., 651)

Before PLYLER, J., County Court, Greenville, December, 1935.

86

88

*Messrs. L. E. Wood* and *L. D. Lanford,* for appellant,

*Messrs. Blythe & Bonham,* for respondents,

July 9, 1936.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

This is an action on a promissory note, executed by the Greer Presbyterian Church, an unincorporated association, in favor of the Peoples State Bank of South Carolina, of which the plaintiffs are the duly qualified Receivers. The defendant set up two defenses. After admitting certain allegations of the complaint, it alleged that the remaining allegations were neither denied nor affirmed. It also claimed the right to offset the deposits of certain individuals of its membership as against the cause of action alleged, asserting the assent of the individual members to such course. The County Judge sustained plaintiffs' demurrer to the answer and granted a motion to strike the first defense as sham and frivolous. The correctness of his rulings in regard to the plea of set-off is challenged by this appeal.

We have given to the questions raised by the exceptions painstaking consideration, and are of opinion that the conclusions reached by Judge Plyler, under applicable principles of law, are correct.

The order appealed from, therefore, which will be reported, is affirmed.

Messrs. Justices Bonham and Fishburne concur.

Mr. Justice Baker dissents.

Mr. Justice Carter did not participate in this decision.

Mr. Justice Baker (dissenting): On January 2, 1932, Peoples State Bank of South Carolina, having branch banks over the entire State, and one at Greer, known as Peoples State Bank of South Carolina (Greer branch), closed its doors for business, at which time and among the assets of said branch bank was a note of Greer Presbyterian Church, an unincorporated association, payable to said branch in the amount of $2,100.00; the due date being February 5, 1932. Certain members of the Greer Presbyterian Church had to their credit on deposit in this branch bank at the time of its closing sufficient funds to pay the above-described note.

Following the closing of the said Peoples State Bank of South Carolina, Receivers were appointed therefor, and took charge of the affairs of the bank and its various branch banks, including the Greer branch.

On October 4, 1935, these Receivers, respondents herein, instituted an action in the Greenville County Court against Greer Presbyterian Church, appellant, demanding judgment for the amount of the note, interest, and an attorney's fee; the note having provided for the payment of an attorney's fee if placed in the hands of an attorney for collection. The complaint, after setting forth the appointment of Receivers for the bank, and that they are qualified and acting in that capacity, that appellant is an unincorporated association, a resident of Greenville County, and that the members of the association are likewise residents of said county, is in the usual form of a suit on a promissory note.

The appellant answered admitting the receivership; that appellant is an unincorporated association, a resident of Greenville County, but alleged that some of its members resided without the county and State, and neither denied nor affirmed the other allegations of the complaint, but de-

manded proof thereof, and further answered by way of af-firmative relief and set-off:

"2. That the defendant was at the time of giving said note, and still is, an unincorporated membership or association for religious purposes; and that at the time plaintiffs were duly qualified as Receivers of the successor of the said original payee, and took charge of its affairs, certain members of the defendant membership had on deposit with the said successor of the original payee, to wit: The Peoples State Bank of South Carolina, Greer Branch, funds to the credit of said members in an amount in excess of that due by the said defendant on the said note; and the plaintiffs were then and are now informed and advised that the depositor-members of defendant membership then agreed and offered and now agree and offer that the said deposits then and still due them be off-set as against the note of the said defendant, which this defendant is informed and believes it had a right then and now to do, but that the plaintiffs refused to so grant to this defendant, through its said members who owned certain deposits then, the right and credit of the off-set as against the said note, which would then have more than paid and exhausted the said note, as defendant is informed and believes.

"3. This defendant alleges, therefore, that by reason of the right to off-set the deposits aforesaid as against the note representing the indebtedness of this defendant, that the plaintiffs have been paid more than the amount of indebtedness due by this defendant, and the defendant, neither as a collective body nor individually as members, owe the plaintiffs anything on account thereof, and now pleads payment by off-set as against the said note, and asks that said note be canceled and delivered to this defendant.

"Wherefore, defendant asks judgment: That it be declared to be in no wise indebted to the plaintiffs; that plaintiff's complaint be dismissed with costs; and that the note

due by defendant be ordered canceled and delivered to this defendant; and for such further relief as may be proper."

To this answer the respondents demurred, but only the grounds of the demurrer to the defense of set-off need be set out, as the case comes to this Court entirely upon exceptions from the order of Honorable John L. Plyler, County Judge, sustaining the demurrer as to the defense of set-off.

The grounds are as follows:

"That the facts alleged in said defense constitute no defense to plaintiffs' alleged cause of action, in that:

"(a) The liability of the defendant in this action is fixed by the terms of the note set forth in the complaint.

"(b) Individual members of an unincorporated association have no legal right to require an off-set of their individual deposits against an indebtedness due the Receivers by an unincorporated association.

"(c) The defendant, an unincorporated association, has no legal right to plead a right of off-set existing in favor of an individual member, since such right, if it exists, exists in favor of and for the benefit of the member only.

"(d) A member of the defendant, an unincorporated association, can claim the right of off-set in this action only after judgment is entered against him, if at all, and no member of the defendant unincorporated association can assume by anticipation that judgment will be entered against him.

"(e) There was at the commencement of this action no relationship of debtor and creditor between plaintiffs and individual members of the defendant unincorporated association; the only relation existing between them is created by statute and arises only after judgment is obtained and there is no mutuality of demand between the Receivers and such members."

In that the prevailing opinion in this case directs the order of Judge Plyler sustaining the demurrer to be reported, it is unnecessary to here again reproduce same. Appropriate exceptions to this order have been taken.

Prior to 1863, when it was desired to bring an action against an unincorporated association, other than "Southern Express Company," and as to this company, prior to 1863, it was necessary to ascertain the individual members of the association and serve each such individual with a summons and complaint, or at least judgment could not be procured against an individual member not joined in the action, and served.

In 1863, when no doubt prospective plaintiffs against Southern Express Company were experiencing considerable trouble in ascertaining against whom to bring their cause of action, and when prospective plaintiffs desiring to commence an action against other unincorporated common carriers, composed of individuals having various places of residence, were experiencing like difficulties, the Legislature, apparently with the intent to aid plaintiff litigants in instituting their actions, and simplify the commencement of an action, and at the same time acquire jurisdiction of all parties who would be liable, passed an Act, the title of which is as follows: "An Act in relation to the Southern Express Company, and to provide additional remedies for the defaults of Common Carriers."

Sections 1, 2, and 4 of the Act of 1863, are as follows:

"I. * * * That process served on any agent of copartnership, company, or firm doing business in this State, under the name and style of the 'Southern Express Company', shall be sufficient to make such copartnership, company, or firm, a party in the Court of Law or Equity in the district in which such agent may be served.

"II. That on judgment or decree obtained against such copartnership, company, or firm, under such process, final process may issue to recover satisfaction of such judgment or decree, and any property of the said copartnership, company, or firm, and the individual property of any copartner or member of such partnership, company, or firm, found in the State, shall be liable to judgment and execution for satisfaction of any such judgment or decree."

"IV. That when any association of individuals, not having a charter from this State; shall undertake to carry for hire by railroad, in whole or in part, the said individuals are hereby required to publish, in three newspapers of this State, a correct list, to be sworn to before one of the Clerks of Common Pleas and General Sessions in this State, of the names and residences of the parties interested in the business of carrying, the said list to appear at least once in two months during the time they are engaged in said business, and all persons thus engaged in the business of common carriers, failing to make such publication, shall be deemed guilty of a misdemeanor, and liable to indictment."

It will be readily seen from a reading of the foregoing Act, and especially Section 4, that the intent of the Legislature was as hereinbefore stated. See case of *Medlin v. Methodist Church et al.,* 132 S. C., 498, at page 502, 129 S. E., 830, 831, and from which we quote: "The statute does not contemplate an action against the association as if it were a corporation. An unincorporated association is in no sense a legal entity and is not made so by the statute. Prior to its passage great difficulty was experienced in making the individual members parties. The liability is theirs, and to render it more conveniently enforceable, the statute permits the association to be sued by its accustomed name, and provides that the execution issued upon the judgment in such case may be levied upon the property of the association and upon that of the individual members."

In 1865, by Act of the Legislature, the Act of 1863 was amended by the extending of the Act "to all unincorporated associations of individuals  *  *  *," and Section 2 of the Act of 1865, is as follows: "II. That all such unincorporated associations may be sued and proceeded against, at Law or in Equity, under the name and style of which they are usually known, without naming the individual members of the association."

The statute law of this State embodying the Act of 1863,

as amended by the Act of 1865, appears as Sections 7796, 7797, and 7798 of the Code of 1932, and are as follows:

"§ 7796. *Unincorporated associations—by what name may be sued.*—All unincorporated associations may be sued and proceeded against under the name and style by which they are usually known, without naming the individual members of the association.

"§ 7797. *On whom process may be served.*—Process served on any agent of any unincorporated association doing business in this State, under the name and style by which it is usually known, shall be sufficient to make such association a party in any Court of record in the county in which such agent may be served.

"§ 7798. *Liability under final process.*—On judgment being obtained against such association under such process, final process may issue to recover satisfaction of such judgment, and any property of the said association, and the individual property of any copartner or member thereof, found in the State, shall be liable to judgment and execution for satisfaction of any such judgment."

In the case of *Ex parte Baylor,* 93 S. C., 414, 77 S. E., 59, the Court declared these statutes constitutional and not obnoxious to the "Due Process" clause in the Constitution (Article 1, § 5); that the substituted service or service by representation was valid; and that where an agent in this State of an unincorporated association is served, he is the agent of the membership, and the members of such unincorporated association are thus served with the summons.

It should again be noted at this point that under Section 7798 hereinabove quoted, on judgment being obtained against such association, final process may issue to recover satisfaction of such judgment, and any property of any member thereof, found in this State, shall be liable to judgment and execution for satisfaction of any such judgment.

So we now have the law declared to be that service of an agent of an unincorporated association is service as upon

the individual members of the association, carrying out the intent of the Legislature in enacting this legislation; and that each member thereof is thereby put on notice that a stern demand has been made upon him or her for the payment of the indebtedness of the association. This is the only construction that can be placed upon the statutes, since, of course, an unincorporated association is not such an entity as can sue or be sued in its name, and simply as an association, and when an agent of an unincorporated association is served with a summons and complaint, with such association named as the defendant, then each and every member of the association is as fully and effectively made a party defendant, and served, as if he had been named in the summons and complaint as a defendant, and personally served.

In the case of *Medlin v. Ebenezer Church, supra,* we find: "The liability of the members is joint and several. 5 C. J., 1362. Any individual member may therefore be sued without proceeding under the statute against the association." We might well add that where the proceeding is brought under the statute, it is tantamount to waiving the right to proceed against only certain members, and becomes a proceeding against each and every member. Respondents in their printed brief admit that the obligation is joint and several.

And again, in the *Medlin case,* and quoting from 5 C. J., 1362: " 'While as between the members of an unincorporated association, each is bound to pay only his numerical proportion of the indebtedness of the concern, yet as against the creditors, each member is individually liable for the entire debt, provided of course the debt is of such a nature and has been so contracted as to be binding upon the associates as a whole.' "

Section 467 of the Code of Civil Procedure specifies what the answer of a defendant must contain; Subdivision 2 thereof being as follows: "A statement of any new matter constituting a defense or counterclaim, in ordinary and con-

cise language, without repetition." In the case of *Frederick et al. v. Chapman et al.,* 144 S. C., 137, 142 S. E., 247, 249, the Court said: "It is well settled by our decisions that the defendant is required to plead all his defenses, whether legal or equitable, in the same action." Following the statement just quoted, the opinion proceeds to cite authority therefor, and which we quote:

"In the case of *Rice v. Mahaffey,* 9 S. C., 281, the Court said:

" 'The Court is, therefore, now competent to administer equitable and legal relief in a single action, and in every action in every manner, and more than formerly the two Courts could do when acting separately and sometimes in antagonism. The defendant is, therefore, bound to plead his defenses, legal and equitable, in the action brought, and is estopped from instituting a separate proceeding in the same cause with the same party.'

"In *Fidelity Fire Insurance Co. v. Windham,* 134 S. C., 373, 133 S. E., 35, 38, the Court, speaking through Mr. Justice Blease, makes the following clear statement of the question:

" 'While it is true that it has been held that the provisions of the Code have not interfered with the essential and inherent distinction between the different causes of action, legal and equitable (*McConnell v. Kennedy,* 29 S. C., 180, 7 S. E., 76), and whatever was equitable before the adoption of the Code still remained equitable, and what was legal is still legal, and even the mode of trial is preserved (*McMahan v. Dawkins,* 22 S. C. [314], 320), yet it has been declared that all rights, legal or equitable, must alike be enforced or protected by the same form of action. *Parker v. Jacobs,* 14 S. C., 112, 37 Am. Rep., 724.

" 'Our Code of Civil Procedure, referring to the answer of the defendant in a civil action, not only indicated what he may plead, but specifically requires that the answer must contain: "A statement of any new matter constituting a de-

fense or counterclaim." Section 410, Vol. I, Code 1922. This Court, construing this language of the cited section, has made the following holdings, which appear to us to be pertinent here: The Code has enlarged the defendant's opportunity for making various defenses to the action by his answer. *Cohrs v. Fraser,* 5 S. C., 351. The defendant must plead in answer all his defenses, legal or equitable; he cannot bring a separate action on any matter that could have been so pleaded. *McAliley v. Barber,* 4 S. C. [45], 48. "It is well settled that a person may set up equitable as well as legal defenses by his answer." *Brock v. Southern Railway Co.,* 44 S. C., 444, 22 S. E., 601.' "

It is contended by respondents that unless they enter judgment against the individual members having deposits with Peoples State Bank of South Carolina, Greer branch, which they represent, and for whose benefit this action is brought, and undertake to enforce the judgment against their property, an offset cannot be pleaded or had. In the first place, a judgment against the association, where the judgment creditor has the right to enter the judgment at any time against the members, is a cloud upon the title of the property of all members of such association. In the second place, should a member wait until after judgment is recorded against him, he has lost his right to plead a set-off. It is too well established that a simple contract debt cannot be set off against a judgment when it is undertaken to enforce the judgment on execution. It might just as well be argued that whenever a person having a valid offset is sued, he cannot plead such offset until a judgment is entered against him, and the collection thereof attempted through execution. If such judgment debtor thus waited, he would immediately be faced with Section 467 of the Code of Civil Procedure.

If the note sued upon had become due the day before the bank closed, and the members of appellant association had proffered their checks in payment of the obligation, it would

have been canceled without question. Happening after the bank closed, the position is now taken by the Receivers that the obligation is joint and several and that an equity has arisen in favor of depositors of the bank which entitles them to exhaust against those who are not depositors, and thereby deprive appellant of a right which he would have had except for the insolvency of the bank and the receivership.

It must be conceded that since the depositor members were jointly and severally liable for the entire indebtedness, if the note had fallen due before the bank closed, or after the bank closed, for that matter, the bank or its Receivers would have had the absolute right, if it had proven to its interest to do so, to credit the entire amount of the deposit of the members of the association or so much thereof as was necessary to pay the note, and thereby obtain an offset in its favor, and such members would have been left to pursue their remedy against the other members. It would seem to be a poor rule that would not work both ways, as has been pointed out in the case of *McColl v. Cottingham*, 124 S. C., 380, 117 S. E., 415.

A very interesting case, the principle of which is applicable to the case under consideration, is *Shannon v. Sutherland, Receiver, et al.* (C. C. A.), 74 F. (2d), 530, 97 A. L. R., 583.

The present case is to be distinguished from such cases as *Bank of Anderson v. Allen*, 146 S. C., 167, 143 S. E., 646, 60 A. L. R., 580, holding that a partnership deposit cannot be offset against the individual obligation of one of the partners. The liability of partners, under the South Carolina cases, is strictly joint, not joint and several, as in the case of members of unincorporated associations. *Pope Manufacturing Co. v. Charleston Cycle Co.*, 55 S. C., 528, 33 S. E., 787.

Because of the joint liability of partners, the element of mutuality, to furnish the basis of an offset, is wholly lack-

ing, where an individual partner's deposit is sought to be set off against a partnership note, or *vice versa*. But where, as here, the obligation is several (as well as joint), enforceable separately (at the creditor's option), against each member, the offset of the individual deposits against the obligation of the association presents a case of real mutuality of accounts. Certainly it is in the spirit of mutuality that where the creditor has the option to treat the liability of the association members as several, the members should have the option to adopt the same view, which is all they are doing when they seek the right of offset of their individual accounts.

. The case of *Boeger & Buchanan v. Hagen*, 204 Iowa, 435, 215 N. W., 597, 55 A. L. R., 562, is in point. Unlike South Carolina, in the State of Iowa the liability of partners is by statute made several as well as joint. Accordingly, in the case cited, it was held that since the partnership debts are the debts of the individual partners, a deposit account in the name of a partner in an insolvent bank may be set off against a partnership note held by the bank.

Independently of the foregoing principles, this Court, though recognizing the doctrine of mutuality as the basis of the right of set-off, has not hesitated to disregard the shadow and to recognize the substance, in determining the true ownership of accounts for the purpose of determining whether a right of set-off exists. Regarding the matter as involving considerations of equity and justice, this Court has said:

"The Courts have uniformly applied the principle of equitable set-off with great liberality to prevent injustice even in cases where elements requisite to legal set-off have been lacking." *Carwile v. Metropolitan Life Insurance Company*, 136 S. C., 111, 134 S. E., 275, 284.

Illustrations of the principle are found in the case cited and in the subsequent case of the same name reported in 136 S. C., 179, 134 S. E., 285, and in *Wilbur v. Mortgage*

*Loan Co.,* 153 S. C., 14, 149 S. E., 262; and *Bank of Anderson v. Majeski,* 149 S. C., 185, 146 S. E., 815.

It would probably have been better pleading for the members here sued to have answered as individuals, but we can see no objection to answering in the name of the unincorporated association. We are unwilling to hold that form should outweigh substance.

Let it be noted that the pleadings do not disclose if appellant association has any property separate and apart from the individual property of its members, out of which the judgment is collectible; nor does it appear that the judgment can be collected from the property of the members other than those having a deposit with the bank.

For the reasons hereinabove set forth, I dissent from the prevailing opinion. In my opinion, the order appealed from should be reversed.