## 15024

MAGNESS v. CHICORA CHAPTER NO. 33, ROYAL ARCH MASONS

(8 S. E. (2d), 344)

May, 1939.

The order of Judge Featherstone follows:

This matter was heard by me at the Spring term of Common Pleas Court in Spartanburg County upon exceptions to the Master's report. This is an action on a promissory note which was made to the plaintiff by Chicora Chapter No. 33, Royal Arch Masons, on March 12, 1927. The note is in the principal amount of Thirty-five Hundred ($3,500.00) Dollars, payable one year after date and bears interest at the rate of seven per cent. (7%) per annum, payable annually, any interest not so paid to become principal and bear interest at the same rate. The note further provides for ten per cent. (10%) attorneys' fees.

The record shows that the defendant admitted all material allegations of the complaint except so much thereof as allege that the defendant was an unincorporated association. The defendant does not question the validity of the note or the amount due thereon, and the sole issue is whether or not the defendant is a corporation or an unincorporated association.

The record indicates that when plans were being made by the defendant looking to the erection of a Masonic Temple, it was found necessary to take care of a mortgage which was held on the building lot before the work could be started on the building. The defendant, therefore, deemed it necessary as a Masonic body to borrow Thirty-five Hundred ($3,500.00) Dollars to take care of its obligations. It appears that this Thirty-five Hundred ($3,500.00) Dollars was secured from Mrs. Virginia Morris Magness, a widow, plaintiff herein, who, according to the officers of the lodge, made the loan in implicit confidence in the members of the Masonic fraternity and their assurance that her money would be paid back. It, therefore, appears that the money secured from the plaintiff was used to liquidate a mortgage on the lot on which the defendant wanted to erect a Masonic Temple. So far as the record shows, there is absolutely no question raised as to the validity of the note and no question is raised but that it was properly executed by the offi-

cers of the lodge and used for lodge purposes, and for the benefit of the Masons who belonged to that lodge.

The defendant relies solely on its position that it is a corporation and not an unincorporated association. The defendant bases its sole claim to be a corporation upon a special Act passed by the Legislature in 1914 and appearing in XXVIII Statutes, at page 644, and entitled "An Act to Incorporate the Grand Royal Arch Chapter of South Carolina." This Act does not refer to Chicora Chapter No. 33, Royal Arch Masons, and, in fact, the defendant's testimony shows that Chicora Chapter No. 33, Royal Arch Masons, was chartered by the Grand Royal Arch Chapter of South Carolina in 1869, and has maintained a continuous existence since that time.

The defendant's contention is that the Act above referred to not only made the Grand Royal Arch Chapter a corporation but also had the effect of incorporating every one of its constituent members or local chapters, of which Chicora Chapter No. 33 was one.

The Master of Spartanburg County has filed his report in which he holds that the Act above referred to cannot be so construed as to incorporate the local chapters of the Grand Royal Arch Chapter. The Master finds that the defendant is an unincorporated association, and that there is due to the plaintiff on the note which is the subject of this action the sum of Fifty-nine Hundred Fourteen and 96/100 ($59,914.96) Dollars, which includes interest calculated to September 12, 1938, and the further sum of Three Hundred Fifty ($350.00) Dollars attorneys' fee. The Master recommends that the plaintiff have judgment for this amount with costs. When the matter was heard by me at Spartanburg, it was agreed that counsel for both the plaintiff and the defendant have the privilege of submitting briefs. Counsel have submitted briefs which I have read carefully and with a great deal of interest. It is my view that the conclusion reached by the Master is correct and that his report should be confirmed. I agree with the Master

that the Legislature of South Carolina could hardly delegate to the Grand Royal Arch Chapter of South Carolina the power to create other and separate corporations out of its constituent or local chapters. If the Legislature had intended to give to the Grand Royal Arch Chapter the power to create corporations out of its local chapters, then certainly it is logical to assume that the Legislature would have provided the means and the procedure by which such chapters could be made corporations. Certainly, also, the Legislature would have provided means by which the charters of such local corporations should be recorded in the office of the Clerk of Court of Common Pleas as in the case of other corporations so that due notice would have been had by anyone seeking to find out the character or the method by which the lodge was doing business.

If it should be contended by the defendant that incorporation of the Grand Royal Arch Chapter is so all-inclusive as to include Chicora Chapter No. 33, Royal Arch Masons, then it might be argued by the plaintiff that the Grand Royal Arch Chapter might be liable for the debts contracted by one of its duly constituted local or subordinate lodges, especially where the debt was made for the purpose of clearing the mortgage on the real property of the lodge. Apparently the defendant's main contention is that the Act of 1914 fixed and endowed each of the constituent chapters then in existence with all the attributes of a corporation.

Defendant's counsel in their brief assert that the defendant is an organization of an eleemosynary character and never was intended to be a profit-making institution, and that such money as it derives from its members is expended entirely for fraternal, moral and religious purposes. They further assert that it has never attempted to take an unworthy position and has never espoused an ignoble cause or principle, and has always been on the side of morality and righteousness. I would not for a moment question the character of the defendant or its worthy pur-

poses. However, the record shows over the signatures of the officers of the defendant chapter that the loan in question was made without security and on the implicit confidence of the plaintiff in the members of the Masonic fraternity. The statement is further made over the signatures of the officers of the defendant chapter that the plaintiff was in distress, greatly in need of her money and that her home was liable to be sold for taxes and that it was very hard for her to procure even the necessities of life. Under these circumstances, it seems to me that the position taken by the defendant is technical and cannot be sustained by the weight of authority. The defendant's attorneys argue that it does not seem fair that one who joins a church or lodge and is pursuing a more or less religious ideal should be faced with personal liability for debts which they did nothing to create. However, it is conceded that this debt was incurred by the proper action on the part of the membership of the lodge, and if it should follow that such action would entail personal liability on the membership, then that liability would be more logically imposed on members who were not diligent in looking after the business of the lodge or in attending meetings rather than have the loss borne by a widow, who "on implicit confidence in the members of the Masonic fraternity and the assurance by its members that her money would be paid back made a loan on plain note" and whose funds were used for the purpose of lifting a mortgage on the land on which the chapter wanted to build a Masonic temple. Under these circumstances, if the issues presented a close question, I feel that all of the equities are on the side of the plaintiff. If the membership of the lodge wished to limit their liability, if the membership did not wish to be personally liable for the debts of the lodge, then it would have been very easy for them to have incorporated the local lodge as a fraternal and eleemosynary corporation under the laws of South Carolina and have filed the charter of the lodge in the office of the Clerk of Court of Common Pleas for Spartanburg County.

Counsel for both plaintiff and defendant concede that ▉ the precise question presented here has never been directly decided in any South Carolina Court. The case of *Elliott, Receiver, etc. v. Greer Presbyterian Church,* 181 S. C., 84, 186 S. E., 651, is referred to in defendant's brief. This case refers to the earlier decision of our Court in the case of *Medlin v. Ebenezer Methodist Church,* 132 S. C., 498, 129 S. E., 830. These decisions by our Court recognize the distinction which has been laid down by the authorities between associations for business enterprises and those for eleemosynary purposes. In the latter class the liability of members of unincorporated associations for debts contracted in behalf of the association is governed by principles of agency and not those of partnership. The authorities hold that where the association's purpose is eleemosynary that in order to hold the members liable that their actual or constructive assent is necessary. In the case of *Elliott v. Greer Presbyterian Church, supra,* the South Carolina Court held that the liability of the members of an unincorporated association was joint and several. This case does not cover the precise question at issue in the present case. However, there could be no doubt but that the purpose and character of Greer Presbyterian Church was purely eleemosynary and that it was not a business or profit-making enterprise. In that respect, its case is certainly similar to that of the defendant in the instant case. Our Supreme Court did not hesitate to hold the membership of the Greer Presbyterian Church liable for the association's debt and held that service on the agent of the association was sufficient upon the rendition of judgment to bind all members of the church at the time of the execution of the note upon which the judgment was founded. Furthermore, the Court upheld the order of the lower Court, which gave the plaintiff leave to enter up judgment against all members of the church when their names had been ascertained from the books and records of the church.

There is no question, therefore, but that the law is clearly established as to the right to sue and reach individual members of unincorporated associations by service on an agent or officer of the association. As stated above, therefore, the question comes back again to the sole issue as to whether the defendant in this matter is a corporation or an unincorporated association. Since the precise question at issue has never been directly decided by a South Carolina Court, then we must look to the precedents laid down by other Courts for guidance and light.

Both the plaintiff and the defendant cite the case of *Heiskell v. Chickasaw Lodge,* 87 Tenn., 668, 11 S. W., 825, 4 L. R. A., 699. This case is cited also in 7 C. J., page 1059, in support of the doctrine that a beneficial corporation may become incorporated by special Act of the Legislature unless the Act is prohibited by some constitutional provision. I do not think there is any question but that the State has the right to endow a beneficial corporation with the usual corporate powers and with the usual limitations of liability for its members. However, this same authority (7 C. J., 1059, citing *Heiskell v. Chickasaw Lodge, supra,* referred to above) lays down the doctrine that "where the power to create corporations is vested by the Constitution in the Legislature, that power cannot be delegated by a Statute authorizing a grand lodge to establish subordinate lodges" and "in any event subordinate lodges do not become corporations by force of a Statute authorizing a grand lodge to establish subordinate lodges and providing that such lodges may hold property."

Apparently there is some confusion as to whether the defendants have taken the position, first, that the Grand Royal Arch Chapter by virtue of its incorporation had the right to invest its subordinate lodges with corporate powers; and second, that by virtue of the incorporation of the Grand Royal Arch Chapter its subordinate lodges were clothed with the powers and immunities of corporations at the same time. In their argument filed since the report of the Master,

the defendant stresses and relies upon the second position, that is, that Chicora Chapter No. 33, Royal Arch Masons, was a corporation by virtue of the incorporation of the Grand Royal Arch Chapter of South Carolina. It seems to me that the case of *Heiskell v. Chickasaw Lodge* referred to above answers both of these positions contrary to the contention of the defendant.

Practically this same issue was passed upon by the Georgia Supreme Court in the case of *Free Gift Society No. 25, Brothers and Sisters of Benevolents v. Edwards,* 163 Ga., 857, 137 S. E., 382, 384. The plaintiff in that case contended that under the charter granted to the mother society, "which gave such mother society authority to establish branches or subordinate lodges, and further provided that such branch societies should have, 'when so established, for themselves, respectively, the same rights, privileges, and powers as those hereinbefore enumerated for the parent society' " that the subordinate societies were corporations. The Georgia Court held that the plaintiff (which was one of the subordinate or branch societies) was not a corporation and that the mother society could not create one.

In argument the plaintiff takes the position that if the Act incorporating the Grand Royal Arch Chapter of South Carolina undertook to create additional corporations other than the Grand Royal Arch Chapter, the Act is unconstitutional, because the other corporations are not mentioned in its title. The title of the Act is "An Act to Incorporate the Grand Royal Arch Chapter of South Carolina." It seems to me that this position is well taken. The body of the Act certainly does not indicate that the constituent chapters are considered on the same basis as the Grand Royal Arch Chapter, but, as a matter of fact, shows very clearly that the constituent chapters are subordinate and are the creatures of the Grand Royal Arch Chapter. The contention of the defense is that each of the constituent chapters were made into corporations by the Special Act of 1914. The logical result of this position is that each of

the constituent chapters would necessarily be considered a corporation separate and apart, so far as its legal entity is concerned, from the Grand Royal Arch Chapter. If this position is correct, then it follows logically that the position of the plaintiff is correct because such separate corporations are not mentioned in its title.

It is, therefore, ordered, adjudged and decreed:

First, that the report of the Master be and is hereby confirmed and is made the order and judgment of this Court.

Second, that counsel may apply at the foot of this decree for any other and further orders which may be necessary.

*Messrs. Samuel T. Lanham, Ben Hill Brown* and *Esten C. Taylor,* for appellant,

*Messrs. Lyles & Daniel,* for respondent,

February 23, 1940.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This case was heard by Judge Featherstone at the 1939, Spring term of Common Pleas Court for Spartanburg County. His decree contains a full statement of the facts out of which this action arose.

On appeal to this Court the following questions are raised: "1. The Act of 1914 incorporated Grand Royal Arch Chapter of South Carolina. Did this legislation also incorporate the constituent chapters then in existence? 2. If respondent made a loan, looking entirely to appellant, as an organized body, for payment, can individuals who were members of appellant chapter, but who have neither authorized nor ratified the transaction, be held to personal liability for its payment?"

We are of opinion, after having carefully considered the transcript of record and the briefs of counsel, that the two questions before us have been fully and correctly answered by Judge Featherstone in his order.

It is the judgment of this Court that the decree of the Circuit Judge be and the same is hereby affirmed.

NOTE: Let the Circuit decree be reported.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE, concur.