### 1867

Betty Fogle WHETSTONE, Respondent v. Michael K. WHETSTONE, Patricia W. Carter, Gayle W. Hagins, Michael K. Whetstone, Jr., Cynthia W. Tobin, Ronald O. Whetstone, Sr., Commodity Engineering Company, Tristeel Corporation, and Division V Company, of whom Michael K. Whetstone, is, Appellant.

(420 S.E. (2d) 877)

Court of Appeals

*Randall M. Chastain,* Columbia, *for appellant.*

*Kermit S. King,* of *King & Vernon,* Columbia, *for respondent.*

*James R. Barber, III,* Columbia, *for receiver.*

Heard Feb. 19, 1992; Decided Aug. 10, 1992.

Reh. Den. Sept. 23, 1992.

BELL, Judge:

This is a divorce action brought by Betty Fogle Whetstone against Michael K. Whetstone. In a consent order, the family court appointed a trustee to help the Whetstones divide the marital property. The court substituted a Receiver for the trustee when the parties could not agree on the property division. After several more hearings, the court ordered the Receiver to propose and submit a plan for the final division of the marital estate. The court approved the Receiver's plan. Mr. Whetstone appeals. We affirm.

In 1982, Mrs. Whetstone first filed for a divorce. That action was settled and the settlement agreement was embodied in a Consent Order. the Consent Order provided for the distribution of the marital assets on a 50/50 basis. The Consent Order also required Mrs. Whetstone to institute a new divorce action naming as parties Mr. Whetstone, the parties' children, and the three corporations in which the family members were stockholders.

The Consent Order required the three family businesses—

Commodity Engineering, Tristeel Corporation, and Division V Company—to be liquidated and the assets divided according to the parties' stock ownership. The Consent Order also provided for the appointment of a trustee. The trustee's duties included overseeing the operation of the businesses and assuming control of all property owned by the parties and the business entities so as to allow for the orderly distribution of the assets. Each party was ordered to cooperate with the trustee. The Whetstones, as managers of the businesses, and the trustee were to meet to discuss the implementation of the court's order. However, Mr. and Mrs. Whetstone could never agree on a meeting date.

On October 28, 1983, the trustee resigned because of the lack of cooperation between the Whetstones. Thereafter, the court replaced the trustee with a Receiver. In addition to all the powers of the trustee, the Receiver was to have total control of the operation of the businesses.

In July, 1984, the parties met to negotiate. After ten hours, they reached a settlement. On August 9, 1984, Mr. Whetstone's attorney drafted a nineteen-page letter containing the parties' agreement. Mrs. Whetstone and all of the children signed the letter.Mr. Whetstone refused to sign. Mrs. Whetstone sought a court order to have Mr. Whetstone comply with the agreement. After a three-day hearing, the parties again reached a settlement of their dispute. The trial judge approved the settlement and decreed the terms and conditions of the August 9th letter constituted the parties' agreement with certain modifications.

Thereafter, the Whetstones were divorced, remarried, separated, reconciled, and separated. During this time, they both filed motions to dismiss the Receiver. Mrs. Whetstone later withdrew her motion. Mr. Whetstone's motion was denied on April 13, 1987. Mrs. Whetstone then sought to have the receivership terminated. The trial court ordered Mr. Whetstone either to return or to account for corporate property and monies. The judge also ordered the Receiver to do whatever was necessary to complete his duties.

After discovery, a hearing was held to identify which marital assets were to be within the control of the Receiver and what steps the Receiver should take to implement the prior orders of the court. The court required the Receiver to submit a plan

to end the receivership and distribute the marital assets. Mr. Whetstone was found guilty of contempt and sentenced to 175 days suspended on condition he not obstruct the Receiver in implementing the court's orders. The court also charged Mr. Whetstone with all the litigation costs and fees as compensatory contempt. In accordance with the court's order, the Receiver submitted a proposed plan to the court. A hearing was held to determine if the the court should approve the plan. Mr. Whetstone filed objections to the Receiver's plan. However, the judge approved the plan and made it the order of the court.

## I.

Mr. Whetstone asserts several deficiencies in the Receiver's plan. After reviewing the record in detail, we find none of them have merit. They fall into two main categories: objections that are not supported by the evidence and objections to items in the Receiver's accounting that are incomplete because Mr. Whetstone himself prevented the Receiver from carrying out the accounting for and marshalling of assets of the marital estate.

## A.

Mr. Whetstone accuses the Receiver of failing to safeguard the rights of third parties who have invested in Commodity Engineering's inventory. These "investors" are relatives of Mr. Whetstone who have not themselves asserted any interest in the business. Mr. Whetstone admits he induced them to participate in a scheme by which he attempted to deceive the Internal Revenue Service. There is no evidence, other than Mr. Whetstone's unsupported, conclusory testimony, that these investments ever existed.

Mr. Whetstone also asserts assets of a Seven Stones Trust were erroneously incorporated into the marital estate. The trial judge found that no trust had been created and incorporated the assets of the Seven Stones Holding Company into the marital estate.

In order to prove the existence of a trust, the law requires the following elements to be shown: a declaration creating the trust, a trust res, and designated beneficiaries. See, *Finch v. Honeycutt,* 246 N.C. 91, 97 S.E. (2d) 478 (1957). Where trust property includes reality, the declara-

tion of trust must be in writing. *See Beckham v. Short,* 298 S.C. 348, 380 S.E. (2d) 826 (1989).

■   The evidence does not establish the existence of a trust. There was no executed trust agreement. There was no initial trust res. The trustees never controlled the trust.[1] Mr. Whetstone retained total control even though he was not named trustee. The trust supposedly was to pay the expenses of Mr. Whetstone's grandchildren's college education, but at trial the uncontradicted testimony was that none of the grandchildren would have reached college age before that trust terminated and the assets reverted to Mr. Whetstone.

## B.

■   Mr. Whetstone failed to account for monies he received even after the court ordered him to do so. Accordingly, the Receiver charged these amounts against Mr. Whetstone as liabilities in the final plan he submitted to the court. Mr. Whetstone contends he was erroneously charged with these liabilities.

After the Receiver was appointed, Mr. Whetstone sold a custom-made tank to V. B. Hook. Hook paid Commodity $56,515 for the manufacturing of the tank. The Receiver had no knowledge of the sale of the tank until the court hearing. The Receiver listed the tank as inventory on the corporate income taxes. After the hearing, he had to amend the corporate tax returns to report the additional income. Mr. Whetstone cashed the check and refused to account for the proceeds even after the court ordered him to do so. The Receiver charged these proceeds against him.

Mr. Whetstone also received $500 a month rent on 1114 Bryan Street, a piece of property allocated to Mrs. Whetstone in a prior court order. He has not accounted for these funds. The Receiver charged Mr. Whetstone with the total amount of these funds. Mr. Whetstone claims the Receiver has not off-

---

[1] During the entire time, Mr. Whetstone retained total control over the bank accounts. Mr. Whetstone moved the accounts several times without the knowledge of the trustees. Neither of the trustees had authority to write checks on the trust account until a year after the accounts were opened. There was testimony that Ben Whetstone did write two checks on a Seven Stones Holding Company account. One check was to pay taxes and the other to move the money from a South Carolina bank to a Texas bank.

set amounts he spent on behalf of the corporation against this amount. Notwithstanding these allegations,Mr. Whetstone has not delivered to the Receiver any receipts where he made these payments.

Mr. Whetstone contends the Receiver did not regain corporate property in the possession of Mrs. Whetstone. The court directed the parties to agree upon the value of the items Mr. Whetstone contended were in Mrs. Whetstone's possession. If the parties could not agree, the items were to be appraised. The parties did not agree on a value, but no appraisal was ever done. Accordingly, the Receiver did not charge the value of these items against Mrs. Whetstone.

In each of these cases, Mr. Whetstone's own obstructive conduct prevented the Receiver from making a more precise accounting. He who seeks equity must do equity. *See, Shumaker v. Shumaker*, 234 S.C. 421, 108 S.E. (2d) 682 (1959). As we discuss more fully below, Mr. Whetstone has consistently engaged in contumacious and dilatory actions in defiance of court orders governing distribution of the marital property. The courts will not hear one who engages in open defiance of judicial orders complain that others who have made a good- faith effort to comply are guilty of some technical default. This is especially true when the recalcitrant's own conduct has prevented the one acting in good faith from fulfilling his duties.

## II.

Mr. Whetstone next contends the family court erred in finding him in contempt and charging him with all costs and fees.

### · A.

A determination of contempt is within the sound discretion of the trial judge but is subject to reversal where based on a finding that is without evidentiary support or where there has been an abuse of discretion. *Spartanburg County Department of Social Services v. Padgett*, 296 S.C. 79, 370 S.E. (2d) 872 (1988). Wilful disobedience of a court order will justify a finding of contempt. *Id.* In order to sustain a finding of contempt, the record must be clear and specific as the acts or conduct upon which such finding is based. *Id.* This record supports the judge's finding of contempt. Mr. Whet-

stone has wilfully disobeyed the orders of the court on several occasions.

The November 28, 1984, order required the Receiver to sell 900 Whaley Street and certain inventory and equipment on the property. Mr. Whetstone made several attempts to stop this sale. He placed an advertisement in the newspaper stating he owned all the property to be sold at the auction. He blocked the entrance to the property with his brother's truck. He recorded a UCC filing statement asserting a security interest in the inventory to tie up the sale. Mr. Whetstone contends these actions were necessary to protect some third party's interest. However, he produced no evidence that a bona fide third party interest existed and no third party has come forward to assert an interest in these assets.

In an order dated April 21, 1988, Mr. Whetstone was required either to account for or return $56,515 he received from V. B. Hook as payment for a custom-made tank sold by Commodity. Mr. Whetstone was required to return a motor home, a tractor, and a boat to the Receiver. Mr. Whetstone was also required to account for $500 a month he received as rent from the Bryan Street property. The order required Mr. Whetstone to comply within 30 days. In holding Mr. Whetstone in contempt, the judge found that he had not complied with any of the court order. Only after the judge issued a subsequent order did Mr. Whetstone return the motor home and tractor.

Mr. Whetstone contends he complied with the order. He asserts that in a letter dated June 11, 1988, he told the Receiver that all the money had been deposited into an account of Commodity. In the letter, he stated that the Receiver could determine from the books and records of Commodity how the money was spent; however, he has given the Receiver neither the books nor the money remaining in the account. He later admitted that the Receiver could not determine how the money was spent from these records. He admits he never accounted for the rent on the Bryan Street property. He contends he has receipts for expenses paid with the money, but he could not determine which expenses belong to Commodity and which belong to him. He has not made an accounting of these funds.

We, therefore, sustain the judge's finding of contempt.

## B.

Mr. Whetstone contends the trial judge erred in not allocating attorney's fees in accordance with the criteria listed in *Darden v. Witham*, 263 S.C. 183, 209 S.E. (2d) 42 (1974), *explained, Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E. (2d) 313 (1991).

The *Darden* case is not applicable here. In the *Darden* case, the judge awarded the wife attorney's fees as costs of the litigation. Here, the judge awarded the fees as reimbursement for Mr. Whetstone's contempt.

Compensatory contempt is money awarded to a party who is injured by a contemnor's action to restore the party to his original position. *See, Curlee v. Howle*, 277 S.C. 377, 287 S.E. (2d) 915 (1982). The award should be limited to the party's actual loss. *Id*. Here the trial judge only awarded Mrs. Whetstone litigation fees and costs accumulated after the order of November 28, 1984. These expenses were incurred as a result of Mr. Whetstone's refusal to obey prior court orders. The award was proper.

## III.

Mr. Whetstone finally argues that the trial judge erred in allocating a motor home and tractor as business assets. He contends the November 28, 1984, order listed as business property things that had been "customarily used" in the business. He contends the motor home was titled in the corporation for convenience; however, it was almost never used for business purposes. Mr. Whetstone contends the motor home is his personal property.

The evidence shows that the motor home was titled in Commodity's name. Mr. Whetstone took possession of the motor home and charged himself $2500[2] on Commodity's books. He never transferred the title to the motor home. After he took possession, he sold the motor home to someone in North Carolina. He prepared a bill of sale listing the buyer as "bearer." The motor home was then transferred to someone in Camden, South Carolina. After Mr. and Mrs. Whetstone were remarried, Mr. Whetstone then purchased the motor home from the Camden owner for $1000. Mr. Whetstone filed a certificate of

---

[2] The Receiver valued the motor home at $25,000.

nonuse with the Highway Department and had a new title issued to Mike Whetstone Associates.

The August 9, 1984, letter upon which the November 28, 1984, order was based listed business equipment as "[b]usiness equipment essential to and ordinarily and historically used in conjunction with the businesses." Mr. Whetstone testified the motor home was used several times on corporate business. He testified his son used it when they were finishing a job in Rock Hill. He testified he used it to drive to subcontractor's conventions. He used it when he bid on jobs in Orlando. He also testified it was used for business purposes in fifteen to twenty other instances. This evidence shows the motor home was used historically for business purposes. The mere assertion that Mr. Whetstone and his family used the motor home for family and personal reasons does not overcome this fact.

Similarly, Mr. Whetstone has not shown that the tractor was anything but corporate property. He testified that the tractor was transferred to him by a bill of sale, even though he took possession before the bill of sale was delivered. He has not shown that he purchased the tractor before taking possession. There is no testimony of the value he paid the corporation for the tractor. He testified he gave it to some employees who had worked on the company's electrical system and trucks. He later got the tractor back and did some work at the grounds of 900 Whaley Street. He kept the tractor at his lake house until the trial judge ordered him to return it. Mere physical possession without further proof of ownership does not transform the tractor from corporate property to personal property.

We conclude by warning Mr. Whetstone that the time for trifling with the judicial process has ended. The sanctions imposed by the family court for contempt show considerable restraint by that court. We trust counsel will advise Mr. Whetstone of the possibility of much severer sanctions if he engages in further contumacy.

Affirmed.

GARDNER and CURETON, JJ., concur.