791 S.E.2d 294

Allen PATTERSON, Steve Tilton, Richard Sendler, Lincoln Privette, Marc Ellis, Joey Carter, Barry Davis, Michael Nieri, Allen Patterson Residential LLC, Tilton Group, Sendler Construction Co., Inc., Privette Enterprises, Ellis Construction Co., Inc., The Barry Davis Company, Inc., Great Southern Homes, and J. Carter, LLC, on behalf of themselves and others similarly situated, Appellants,

v.

Herb WITTER, Colin Campbell, Eddie Weaver, Tom Markovich, Keith Smith, Jim Gregorie, individually and as Trustees of the South Carolina Homes Builders Self Insurers Fund, and the South Carolina Home Builders Self Insurers Fund, Respondents.

Appellate Case No. 2014–000963
Opinion No. 5416

Court of Appeals of South Carolina.

Submitted December 1, 2015
Filed June 15, 2016
Rehearing Denied October 27, 2016

68

James Edward Bradley and S. Jahue Moore, both of Moore Taylor Law Firm, P.A., of West Columbia, for Appellants.

William W. Wilkins and Burl F. Williams, of Nexsen Pruet, LLC, of Greenville, for Respondents; James Lynn Werner and Lawrence M. Hershon, of Parker Poe Adams & Bernstein LLP, of Columbia, for Respondent South Carolina Home Builders Self Insurers Fund and Respondents Herb Witter, Colin Campbell, Eddie Weaver, Tom Markovich, Keith Smith, and Jim Gregorie, individually and as Trustees of the South Carolina Home Builders Self Insurers Fund; and Pope D. Johnson, III, of Johnson & Barnette, LLP, of Columbia, for Respondents Herb Witter, Colin Campbell, Eddie Weaver, Tom Markovich, Keith Smith, and Jim Gregorie, individually and as Trustees of the South Carolina Home Builders Self Insurers Fund.

WILLIAMS, J.:

In this civil matter, Allen Patterson and several others[1] (collectively "Appellants") appeal the circuit court's grant of the South Carolina Home Builders Self Insurers Fund (the Fund) and its trustees' (collectively "Respondents") Rule 12(b)(6), SCRCP, motion to dismiss. Appellants argue the court erred in (1) finding the Fund was not a trust; (2) ruling

---

1. The other named appellants in this matter are Steve Tilton, Richard Sendler, Lincoln Privette, Marc Ellis, Joey Carter, Barry Davis, Michael Nieri, Allen Patterson Residential LLC, Tilton Group, Sendler Construction Co., Inc., The Barry Davis Company, Inc., Great Southern Homes, and J. Carter, LLC.

the action involved derivative claims subject to the pleading requirements of Rule 23(b)(1), SCRCP; and (3) holding Appellants' complaint did not comply with such requirements. We affirm.

## FACTS/PROCEDURAL HISTORY

Home Builders Association of South Carolina, Inc. (HBASC) is a nonprofit corporation organized under the laws of South Carolina. HBASC's membership is comprised of individual and corporate homebuilders throughout the state. On September 27, 1995, HBASC created the Fund in a document titled "Agreement and Declaration of Trust" (the Agreement). Pursuant to the Agreement with HBASC, as the "Settlor," the contemporaneously formed "Board of Trustees" (the Board) was to direct the affairs of the Fund. According to the Agreement, the Fund's purpose was to meet and fulfill HBASC members' obligations and liabilities under the South Carolina Workers' Compensation Act[2] (the Act).

The Fund is regulated and controlled by the South Carolina Workers' Compensation Commission (the Commission) and is not an insurance company. To become a member of the Fund and satisfy workers' compensation obligations under the Act, a homebuilder must first submit an application to the Commission. If the Commission approves the application, then the homebuilder receives a certificate confirming membership in the Fund. Five weeks following approval, the Fund begins to bill the new member for the premium relating to its business. Each Fund member pays a predetermined rate for protection from workers' compensation claims of its employees. Additionally, each member is jointly and severally liable for the obligations of the Fund.

Appellants are members of the Fund. On February 16, 2012, Appellants filed a complaint (First Complaint) against Respondents, bringing causes of action for, *inter alia*, breach of fiduciary duty, breach of trust, and breach of contract. Appellants alleged the Board breached its fiduciary duties by voting to remove approximately $5 million from the Fund to establish a separate member-owned insurance company that Appellants

---

2. S.C. Code Ann. §§ 42–1–10 through –19–50 (2015 & Supp. 2015).

argue would not provide any benefit to existing Fund members.[3]

After Appellants amended the First Complaint, Respondents moved to dismiss under Rule 12(b)(6), SCRCP, arguing Appellants failed to meet the pleading requirements for derivative suits under Rule 23(b)(1), SCRCP. Respondents alternatively asserted the suit involved the internal affairs of a trust and, thus, was under the exclusive jurisdiction of the probate court pursuant to section 62–7–201 of the South Carolina Code (Supp. 2015).

On March 4, 2013, the circuit court accepted Respondents' alternative argument and dismissed the action without prejudice, holding it lacked subject matter jurisdiction to hear the case. The court ruled Appellants must initially file the action in probate court, but could subsequently remove it to circuit court under section 62–1–302(d)(4) of the South Carolina Code (Supp. 2015).

Appellants filed another complaint (Second Complaint) on April 9, 2013, in probate court and moved to remove the case to circuit court. On April 22, 2013, the probate court granted Appellants' motion to remove. In the circuit court, Respondents again filed a motion to dismiss the Second Complaint, arguing the lawsuit was a shareholder derivative action and Appellants failed to comply with the pleading requirements of Rule 23(b)(1). On November 8, 2013, the circuit court denied Respondents' motion to dismiss, holding the Fund was a trust and, as such, was not subject to the pleading requirements of Rule 23(b)(1).

Respondents subsequently filed a Rule 59(e), SCRCP, motion to alter or amend judgment. The circuit court granted Respondents' motion on February 11, 2014, and dismissed Appellants' Second Complaint.[4] In reaching its decision, the

3. The $5 million transfer to a new mutual insurance company was ratified by 96.5% of Fund members and approved by the Commission. Respondents returned the $5 million to the Fund after failing to reach an agreement with HBASC on the formation of the company.

4. Upon our review of the record on appeal, we cannot determine whether the Agreement was attached to the Second Complaint. Nevertheless, given that no party raised an issue on appeal regarding the circuit court's review of the Agreement under a Rule 12(b)(6) motion,

court found the Fund was not a trust, but instead resembled an unincorporated association. The court further explained the "gravamen of the [Appellants' c]omplaint alleges that the [F]und has been injured, not that the members have been injured." Thus, the court found the claims were typical of derivative claims subject to the pleading requirements of Rule 23(b)(1), requiring particularized allegations that Appellants first made a demand on the Board to obtain the relief they sought. The court found Appellants' complaint did not include sufficient allegations of such a demand and, therefore, did not comply with Rule 23(b)(1).

The circuit court, however, recognized Respondents had agreed to accept a January 20, 2013 letter from Appellants as a demand under Rule 23. After giving Respondents sixty days to respond to the letter, the court ruled Appellants "may pursue whatever legal action they determine is appropriate." On March 3, 2014, Appellants filed a motion to alter or amend the order of dismissal, which the circuit court denied. This appeal followed.

## ISSUES ON APPEAL

I.    Did the circuit court err in finding the Fund was not a trust?

II.   Did the circuit court err in ruling the action involved derivative claims subject to Rule 23(b)(1), SCRCP?

III.  Did the circuit court err in holding Appellants' complaint did not comply with the pleading requirements of Rule 23(b)(1), SCRCP?

## STANDARD OF REVIEW

■■■  The appellate court applies the same standard of review as the circuit court in reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP. *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). "A motion to dismiss under Rule 12(b)(6) should not be granted if facts alleged and inferences reasonably deducible therefrom would entitle the

we find it is the law of the case. *See Trans. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund,* 389 S.C. 422, 431, 699 S.E.2d 687, 691 (2010) ("An unappealed ruling is the law of the case and requires affirmance.").

plaintiff to relief on any theory of the case." *Flateau v. Harrelson*, 355 S.C. 197, 202, 584 S.E.2d 413, 415 (Ct. App. 2003). "The question is whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Cole Vision Corp. v. Hobbs*, 394 S.C. 144, 149, 714 S.E.2d 537, 539 (2011).

## LAW/ANALYSIS

### I. Unincorporated Association or Trust

#### A. Judicial Estoppel

■ As a preliminary matter, Appellants contend Respondents are judicially estopped from arguing the Fund is not a trust because Respondents previously took an inconsistent position in their first motion to dismiss Appellants' First Complaint. We disagree.

■ "Judicial estoppel is an equitable concept that prevents a litigant from asserting a position inconsistent with, or in conflict with, one the litigant has previously asserted in the same or related proceeding." *Cothran v. Brown*, 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004). "The purpose of the doctrine is to ensure the integrity of the judicial process, not to protect the parties from allegedly dishonest conduct by their adversary." *Id.* To prevail on a judicial estoppel claim, a party must prove the following:

(1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent.

*Id.* at 215–16, 592 S.E.2d at 632. In South Carolina, the doctrine of judicial estoppel applies only to matters of fact, not conclusions of law. *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997).

In its motion to dismiss Appellant's First Complaint, Respondents argued Appellants failed to meet the pleading re-

quirements for derivative suits under Rule 23(b)(1). Respondents alternatively asserted the suit involved the internal affairs of a trust and, thus, was under the exclusive jurisdiction of the probate court. The circuit court accepted Respondents' alternative argument when it dismissed the case for lack of subject matter jurisdiction. After Appellants filed their Second Complaint in probate court and removed the case to circuit court, Respondents filed another motion to dismiss, contending the Fund was not a trust.

Here, Respondents have not misrepresented facts or changed their version of events to gain an advantage in the instant litigation. *See Bailey*, 327 S.C. at 252, 489 S.E.2d at 477 ("When a party has formally asserted a certain version of the *facts* in litigation, he cannot later change those facts when the initial version no longer suits him." (emphasis added)). Rather, Respondents argued alternative legal theories concerning the essence of the Fund. *See id.* at 251, 489 S.E.2d at 477 (stating the doctrine of judicial estoppel "does not apply to conclusions of law or assertions of legal theories"). Therefore, we find the doctrine of judicial estoppel is inapplicable to this case.

### B. Merits

█ As to the merits of this issue, Appellants argue the circuit court erred in finding the Fund was not a trust. We disagree.

█ "A trust is an 'arrangement whereby property is transferred with intention that it be administered by [a] trustee for another's benefit.' " *State v. Parris*, 363 S.C. 477, 482, 611 S.E.2d 501, 503 (2005) (quoting *State v. Jackson*, 338 S.C. 565, 570, 527 S.E.2d 367, 370 (Ct. App. 2000)). To prove the existence of a trust, one must show (1) a declaration creating the trust, (2) a trust *res*, and (3) designated beneficiaries. *Whetstone v. Whetstone*, 309 S.C. 227, 231, 420 S.E.2d 877, 879 (Ct. App. 1992).

█ "An unincorporated association is a body of individual persons organized without a charter for the prosecution of some common enterprise." *Graham v. Lloyd's of London*, 296 S.C. 249, 255, 371 S.E.2d 801, 804 (Ct. App. 1988). An unincorporated association is not a legal entity separate from

its members. *Id.* Moreover, the liability of its members is joint and several. *Elliott v. Greer Presbyterian Church*, 181 S.C. 84, 96, 186 S.E. 651, 658 (1936); *see also* S.C. Code Ann. § 15–35–170 (2005) ("On judgment being obtained against an unincorporated association[,] ... the individual property of any co-partner or member thereof found in the State shall be liable to judgment and execution for satisfaction of any such judgment.").

We acknowledge that, at first glance, the Agreement contains language that could be indicative of the Fund being a trust. The Agreement refers to HBASC as the "Settlor." Further, the Agreement grants the Board all powers conferred by the South Carolina Uniform Trustee's Powers Act [5] and authorizes it to invest assets of the Fund. *Cf.* S.C. Code Ann. § 62–7–933 (Supp. 2015) (providing the prudent investor rule for trustees). Additionally, the Agreement mentions the Fund's compliance with the rule against perpetuities and states the situs of the Fund is the State of South Carolina.

The Agreement, however, also contains provisions usually associated with business corporations. The Board, for example, is elected by the Fund's members. *Cf.* S.C. Code Ann. § 33–8–103(d) (2006) (providing for the election of board of directors by the shareholders). In addition, the Agreement provides notice requirements for regular and special meetings of the Board. *Cf.* S.C. Code Ann. § 33–8–220 (2006) (stating the notice requirements for meetings of the board of directors). Likewise, the Agreement requires that the Board establish an office to house the Fund's books and records. *Cf.* S.C. Code Ann. § 33–16–101 (2006) (requiring corporations to maintain a principal office for corporate records). Under the Agreement, the Fund must indemnify the Board for negligence in all actions made in good faith. *Cf.* S.C. Code Ann. § 33–8–510 (2006) (granting authority to corporations to indemnify board of directors for actions made in good faith). Moreover, the Agreement authorizes the Board to obtain liability insurance at the expense of the Fund for all actions, except those made in bad faith or in gross negligence. *Cf.* S.C. Code Ann. § 33–8–

5. The South Carolina Uniform Trustee's Powers Act was repealed by the South Carolina Uniform Trust Code in 2005. *See* Act No. 66, 2005 S.C. Acts 280–518 (codified as amended at S.C. Code Ann. §§ 62–7–101 through –1106 (Supp. 2015)).

570 (2006) (allowing corporations to purchase and maintain liability insurance for their board of directors).

Based upon our review of the Agreement and applicable law, we find the circuit court correctly held the Fund was not a trust. *See* 1 S. ALAN MEDLIN, ESTATE PLANNING IN SOUTH CAROLINA: THE LAW OF WILLS AND TRUSTS § 501.1 (2002) (stating "a settlor may fail to create a trust despite using the word trust"). While the Agreement—arguably a declaration—most likely satisfies the first element for creating a trust, Appellants cannot prove the remaining elements. *See Whetstone*, 309 S.C. at 231, 420 S.E.2d at 879. First, HBASC did not transfer any money or property to the Board to hold in trust for the Fund's members. *See* S.C. Code Ann. § 62-7-401 (Supp. 2015) (stating a trust may be created by a "transfer of property to another person as trustee"); *Whetstone*, 309 S.C. at 231, 420 S.E.2d at 879 (holding one must show a trust *res* to prove the existence of a trust); MEDLIN, *supra*, § 501.1 (noting "[a] settlor cannot create a trust in property not currently owned"). After the Fund was created, its members began to contribute membership dues and premiums into the Fund in exchange for protection for its workers' compensation obligations.

Second, the Agreement contains no provision for "beneficiaries." *See* S.C. Code Ann. § 62-7-402(a)(3) (Supp. 2015) (requiring a trust to have definite beneficiaries); § 62-7-402(c) ("A beneficiary is definite if the beneficiary can be ascertained now or in the future . . . ."). Homebuilders must apply to become Fund members. Further, a third party—the Commission—must approve Fund members. Thus, even assuming the Agreement is a declaration of trust, potential Fund members are not ascertainable from the Agreement.

Moreover, we agree with the circuit court that the Fund resembles an unincorporated association. *See Graham*, 296 S.C. at 255, 371 S.E.2d at 804 (holding an unincorporated association is a "body of individual persons organized without a charter for the prosecution of some common enterprise"). The Fund is a common enterprise of homebuilders who have voluntarily joined together to form a fund to provide workers' compensation coverage for their businesses. Additionally, the Fund's members are joint and severally liable for any shortfall

in Fund assets. *See Elliott,* 181 S.C. at 96, 186 S.E. at 658 (stating the liability of an unincorporated association's members is joint and several).

Therefore, we find the circuit court properly concluded the Fund was an unincorporated association and not a trust.

## II. Direct or Derivative Claims

Appellants next argue their claims are not derivative and, thus, do not need to comply with the pleading requirements of Rule 23(b)(1), SCRCP. We disagree.

At the outset, because Rule 23(b)(1) covers derivative suits for both corporations and unincorporated associations, we find that principles of South Carolina law concerning derivative suits for corporations apply in this case. *See* Rule 23(b)(1), SCRCP (outlining the requirements for "derivative action[s] brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association").

"In South Carolina, the authority to direct the business and affairs of a corporation is delegated to a board of directors, not the shareholders." *Carolina First Corp. v. Whittle,* 343 S.C. 176, 185, 539 S.E.2d 402, 407 (Ct. App. 2000). Individual shareholders may not directly sue corporate directors for losses suffered by the corporation. *Babb v. Rothrock,* 303 S.C. 462, 464, 401 S.E.2d 418, 419 (1991). "An action seeking to remedy a loss to the corporation is generally a derivative one." *Brown v. Stewart,* 348 S.C. 33, 49, 557 S.E.2d 676, 684 (Ct. App. 2001) (quoting *Hite v. Thomas & Howard Co.,* 305 S.C. 358, 361, 409 S.E.2d 340, 342 (1991), *overruled on other grounds by Huntley v. Young,* 319 S.C. 559, 560, 462 S.E.2d 860, 861 (1995)).

"A derivative action is, in essence, a challenge to a board's managerial authority." *Whittle,* 343 S.C. at 187, 539 S.E.2d at 408. "[A] shareholder's suit is derivative if the gravamen of his complaint is an injury to the corporation and not to the individual interest of the shareholder." *Brown,* 348 S.C. at 49, 557 S.E.2d at 684 (quoting *Hite,* 305 S.C. at 361, 409 S.E.2d at 342).

Nevertheless, the general rule that a shareholder cannot bring a direct suit for injuries to a corporation has two

exceptions: (1) when the shareholder suffers an injury separate and distinct from that suffered by other shareholders, and (2) when the alleged wrongdoer owes a fiduciary relationship to the shareholder and full relief cannot be accomplished through recovery by the corporation. *Rice–Marko v. Wachovia Corp.*, 398 S.C. 301, 308, 728 S.E.2d 61, 65 (Ct. App. 2012) (quoting *Brown*, 348 S.C. at 49, 50, 557 S.E.2d at 684, 685).

In the instant case, Appellants allege the Board's decision to remove $5 million from the Fund harmed the Fund's ability to adequately cover its risks. Thus, the action is premised on the alleged harm to the overall Fund, not to individual members. Accordingly, we find the circuit court correctly held Appellants' claims were derivative and subject to the pleading requirements of Rule 23(b)(1). *See* Rule 23(b)(1), SCRCP (noting the rule applies to members bringing a derivative action to enforce a right of an unincorporated association); *Brown*, 348 S.C. at 49, 557 S.E.2d at 684 (stating "a shareholder's suit is derivative if the gravamen of his complaint is an injury to the corporation and not to the individual interest of the shareholder").

Appellants also argue their action falls under the fiduciary relationship exception to the general rule for derivative suits because the Board owed a special fiduciary duty to the Fund's members to protect the Fund's assets. *See Rice–Marko*, 398 S.C. at 308–09, 728 S.E.2d at 65–66. The circuit court did not rule on the special duty argument, and it is nowhere mentioned by Appellants in their complaints, the transcript of the motions hearing, or their Rule 59(e) motion to alter or amend judgment. Because Appellants raise this argument for the first time on appeal, we find the issue is not preserved for appellate review and decline to address it. *See Chastain v. Hiltabidle*, 381 S.C. 508, 514–15, 673 S.E.2d 826, 829 (Ct. App. 2009) ("[A]n appellate court cannot address an issue unless it was raised to and ruled upon by the [circuit] court.").

Therefore, we find the circuit court properly concluded Appellants' claims were derivative and, thus, subject to the requirements of Rule 23(b)(1).

### III. Compliance with Rule 23(b)(1)

Finally, Appellants assert that, even if their claims are derivative, they properly complied with Rule 23(b)(1) by alleging a demand on the Board. We disagree. In pursuing a derivative suit, shareholders must first make a demand on the board of directors to take the action they desire or allege that such demand would be futile. *Whittle*, 343 S.C. at 188, 539 S.E.2d at 409 (quoting *Allison ex rel. Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F.Supp. 1106, 1112 (D. Del. 1985)). The purpose of the demand requirement is to ensure compliance with the most fundamental principle of corporate governance: directors are answerable to the shareholders and responsible for managing all aspects of corporate affairs. *Id.* (quoting *Gen. Motors Corp.*, 604 F.Supp. at 1117). "A demand alerts the board so that it may take the corrective action, if any, which it deems necessary." *Id.*

Rule 23(b)(1) governs the manner in which a shareholder must bring a derivative action and provides as follows:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. . . .

"The demand requirement of Rule 23 balances a shareholder's right to assert a derivative claim against a board's duty to decide whether to invest the resources of the corporation in pursuit of the shareholder's claim of a corporate wrong." *Whittle*, 343 S.C. at 187, 539 S.E.2d at 408 (quoting *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992)).

The heightened and particularized pleading requirements of Rule 23(b)(1) are intended to allow the court to

perform a gatekeeping function to prevent the unrestrained use of derivative actions. *Id.* at 185, 539 S.E.2d at 408 (quoting 5 James Wm. Moore et al., Moore's Federal Practice, ¶ 23.1.02[4] (3d ed. 2000)). "A derivative action that does not meet the pleading requirements of Rule 23(b)(1), SCRCP, is properly dismissed pursuant to Rule 12(b)(6)." *Clearwater Tr. v. Bunting*, 367 S.C. 340, 351, 626 S.E.2d 334, 339 (2006).

This court has previously upheld the dismissal of a derivative suit when the shareholders' complaint failed to comply with Rule 23(b)(1). *See Whittle*, 343 S.C. at 184–91, 539 S.E.2d 406–10. In *Whittle*, a group of shareholders brought a derivative suit against a bank's parent corporation, seeking rescission of bonuses paid to various bank officers in the form of stock in another company. 343 S.C. at 181, 539 S.E.2d at 405. The shareholders alleged the bonuses were devised as a method of self-dealing to the detriment of the bank and its parent corporation. *Id.* at 182, 539 S.E.2d at 406. The circuit court granted the bank and other defendants' motion to dismiss the action, finding the shareholders failed to allege particularized facts showing they complied with the demand requirements of Rule 23(b)(1) and the demand thereafter was wrongfully refused. *Id.* at 183, 539 S.E.2d at 406. In their complaint, the shareholders only alleged they demanded "certain information" and "certain actions" and made a "supplemental demand." *Id.* at 189, 539 S.E.2d at 409. Because the complaint did not contain allegations regarding what the shareholders demanded and what the bank's board of directors rejected, this court held the shareholders failed to comply with the demand requirements of Rule 23(b)(1) and affirmed the circuit court's dismissal of the action. *Id.*

In the instant case, Appellants assert they complied with Rule 23(b)(1), pointing to paragraph eight of their complaint:

8. To the extent required by South Carolina Rule of Civil Procedure 23, the [Appellants] allege:

a. The [Appellants] were beneficiaries of the trust at all times relevant including when the transactions complained of were made.

b. The [Appellants], their agents or others on their behalf have made efforts to obtain the action they desire in this matter including correspondence to Counsel for

the [Respondents], meetings with counsel for the [Respondents], correspondence to the Trust and a previous lawsuit to no avail.

Contrary to Appellants' contention, we find they failed to allege sufficient particularized facts in their complaint to demonstrate they made a demand on the Board. We first note Appellants' allegations concerning their demand are vague and similar to those made in *Whittle*. 343 S.C. at 189, 539 S.E.2d at 406 (noting the shareholders only alleged in their complaint that they demanded "certain information" and "certain actions" and made a "supplemental demand"). In paragraph 41 of their complaint, Appellants requested that the circuit court (1) remove the entire Board for their breach of fiduciary duties, (2) provide for the election of a new Board, (3) order that all assets be returned to the Fund, (3) order all damages incurred and money taken from the Fund be awarded, (4) enjoin future violations of fiduciary duties, and (5) award Appellants actual and punitive damages.

In paragraph eight of the complaint, however, Appellants provided no guidance on exactly what recourse they sought from the Board prior to this suit. Therefore, the circuit court could not discern whether Appellants simply requested the $5 million be returned to the Fund or whether they, among other things, demanded that members of the Board resign or called for a new election. As a result, the circuit court was not in a position to determine whether the Board's refusal of the demand was wrongful and decide whether to allow the lawsuit to proceed. *See Whittle*, 343 S.C. at 189, 539 S.E.2d at 409 (holding shareholders did not comply with Rule 23(b)(1) because their complaint did not contain allegations regarding what they demanded and what the board of directors rejected).

Appellants nevertheless counter that their January 20, 2013 letter—a proper demand on the Board—was incorporated by reference in their Second Complaint.[6]

---

6. After Respondents alerted Appellants to the Rule 23(b)(1) requirements by moving to dismiss the First Complaint for failure to comply with the rule, Appellants sent the January 20, 2013 demand letter. Respondents replied, stating they were withholding a substantive response until the circuit court ruled on their motion to dismiss. The

We find Appellants did not specifically incorporate the letter by reference in merely stating they sent "correspondence" to Respondents. Moreover, Appellants conceded the letter was not attached to the complaint, but rather was only included with their memorandum in opposition to Respondents' motion to dismiss. *See* Rule 10(c), SCRCP ("A copy of any plat, photograph, diagram, document, or other paper which is an exhibit to a pleading is a part thereof for all purposes if a copy is attached to such pleading."); *McCormick v. England*, 328 S.C. 627, 632–33, 494 S.E.2d 431, 433 (Ct. App. 1997) ("A ruling on a motion to dismiss a claim must be based solely on the allegations set forth on the face of the complaint.").

Therefore, we find the circuit court properly concluded that Appellants failed to comply with the requirements of Rule 23(b)(1).

## CONCLUSION

Based on the foregoing, we hold the circuit court properly concluded the Fund was not a trust, Appellants' claims were derivative, and Appellants failed to comply with the pleading requirements of Rule 23(b)(1). Accordingly, the circuit court's grant of Respondents' motion to dismiss is

**AFFIRMED.**[7]

HUFF and THOMAS, JJ., concur.

_____

circuit court dismissed the First Complaint for lack of subject matter jurisdiction on March 5, 2013. Respondents contend that, before they were able to provide a substantive reply, Appellants filed the Second Complaint in probate court on April 9, 2013, and removed the matter to circuit court. The circuit court then dismissed the Second Complaint and gave Respondents sixty days to respond to the demand letter, allowing Appellants to file another complaint that complied with Rule 23(b)(1). Appellants, however, instead chose to appeal the circuit court's dismissal.

7. We decide this case without oral argument pursuant to Rule 215, SCACR.