**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Katie Elizabeth Wright, Respondent,

v.

Travis Wayne Wright, Appellant.

Appellate Case No. 2017-000484

Appeal From York County
Thomas Henry White, IV, Family Court Judge

Unpublished Opinion No. 2019-UP-328
Submitted September 1, 2019 – Filed October 9, 2019

**AFFIRMED**

Travis Wayne Wright, of York, pro se.

Jane M. Randall, of The Law Offices of Jane M. Randall,
PA, of Rock Hill, for Respondent.

**PER CURIAM:** Travis Wright (Husband), pro se, appeals the family court's contempt order, arguing the family court erred by (1) modifying the paragraph of the parties' mediation stipulation (the agreement) pertaining to the parties' retirement accounts and improperly allowing parol evidence, (2) holding him in

contempt as to all issues raised, and (3) awarding attorney's fees to Katie Wright (Wife). We affirm.[1]

1. We find the family court did not err by concluding the reference to Husband's Roth IRA in paragraph ten of the agreement was a clerical error because the parties intended and understood "Roth IRA" to be "401(k)," and the correction did not change the scope of the divorce decree. "A court approved divorce settlement must be viewed in accordance with principles of equity and there is implied in every such agreement a requirement of reasonableness." *Brown v. Brown*, 392 S.C. 615, 623-24, 709 S.E.2d 679, 684 (Ct. App. 2011) (quoting *Ebert v. Ebert*, 320 S.C. 331, 340, 465 S.E.2d 121, 126 (Ct. App. 1995)). Generally, "[t]he [family] court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal." S.C. Code Ann. § 20-3-620 (2014). However, the family court may correct clerical errors at any time of its own initiative. *See* Rule 60(a), SCRCP ("Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party . . . ."); *Dion v. Ravenel, Eiserhardt Assocs.*, 316 S.C. 226, 230, 449 S.E.2d 251, 253 (Ct. App. 1994) ("Generally, a clerical error is defined as a mistake in writing or copying."); *id.* ("As applied to judgments and decrees, [a clerical error] is a mistake or omission by a clerk, counsel, judge or printer which is not the result of exercise of judicial function."); *Michel v. Michel*, 289 S.C. 187, 190, 345 S.E.2d 730, 732 (Ct. App. 1986) ("[Although] a court may correct mistakes or clerical errors in its own process to make it conform to the record, it cannot change the scope of the judgment."); *Brown*, 392 S.C. at 622, 709 S.E.2d at 683 (holding Rule 60(a) did not authorize the family court's modifications when its order significantly changed the terms of the divorce decree, thus modifying the substance of the judgment). Here, during the contempt hearing, Husband acknowledged his financial declaration—which he submitted and filed with the family court at the final hearing—showed the value of his voluntary retirement accounts was $106,000. There was no indication at the final hearing, in the financial declaration, or in the agreement that Husband owned any retirement account other than the Roth IRA specifically referenced in paragraph ten of the agreement; however, during the contempt hearing, Husband admitted he also had a 401(k) retirement account. He testified that although he would not have agreed to give Wife 100% of his 401(k), he confirmed the 401(k) was the only retirement account in his name with an existing balance at the time of the divorce proceeding. Husband stated he

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

transferred his Roth IRA to Wife several years prior to the divorce action and believed this previous transfer satisfied his responsibilities under paragraph ten of the agreement. He also admitted the last transfer from the Roth IRA occurred in December 2007, and the Roth IRA balance had been $0 since December 31, 2008. Additionally, Husband acknowledged he previously borrowed $15,000 from his 401(k) account, and paragraph ten of the agreement provided he had not "taken out any additional loans against his account other than the $15,000 he borrowed in 2015." Wife denied Husband ever transferred any portion of his Roth IRA to her. She testified she was only aware of one retirement account belonging to Husband, which was an account valued at roughly $100,000. Wife stated that during mediation, the parties always referred to Husband's retirement as "the full retirement account and in the amount of $100,000," and she intended to receive 100% of Husband's 401(k)—"his full retirement account." Further, although we acknowledge the 401(k) comprised a significant portion of Husband's total assets, because the agreement purported to be a "full settlement of all issues raised," we find it must be interpreted to encompass all of Husband's retirement accounts. Thus, we find the reference to the Roth IRA in the agreement was intended to refer to the full value of Husband's retirement accounts contained in his financial declaration. Furthermore, we find it was both parties' understanding Husband was to transfer 100% of the value of his 401(k)—$106,000—to Wife because Husband testified the only retirement account in his name that contained a balance at the time of the divorce proceedings was the 401(k). Based on the foregoing, the inclusion of the term "Roth IRA" rather than "401(k)" in the agreement was a clerical error, and the family court's correction of this error did not modify the scope of the agreement. Additionally, the family court found Husband's explanations for failing to complete the retirement account rollover were not credible. Therefore, although Husband asserted he did not intend to give Wife his 401(k) when he entered the agreement, we defer to the family court's credibility findings. *See Lewis v. Lewis*, 392 S.C. 381, 388-89, 709 S.E.2d 650, 654 (2011) ("[D]e novo review neither relieves an appellant of demonstrating error nor requires [this court] to ignore the findings of the family court."); *Messer v. Messer*, 359 S.C. 614, 620, 598 S.E.2d 310, 314 (Ct. App. 2004) (noting this court is "mindful that the [family court], who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony").

Further, we find the family court did not err by considering parol or extrinsic evidence. "When a written contract is ambiguous, parol and extrinsic evidence may be admitted regarding the parties' intent." *Progressive Max Ins. Co. v. Floating Caps, Inc.*, 405 S.C. 35, 47, 747 S.E.2d 178, 184 (2013). "[A]mbiguous

[marital] agreements will be examined in the same manner as other agreements in order to determine the intention of the parties." *Lindsay v. Lindsay*, 328 S.C. 329, 337, 491 S.E.2d 583, 587 (Ct. App. 1997). "A court approved divorce settlement must be viewed in accordance with principles of equity and there is implied in every such agreement a requirement of reasonableness." *Brown*, 392 S.C. at 623-24, 709 S.E.2d at 684 (quoting *Ebert*, 320 S.C. at 340, 465 S.E.2d at 126). Here, the family court held a contempt hearing to allow Wife to present evidence that Husband failed to roll over his Roth IRA and Husband to show he was not in contempt for failing to do so. *See* Rule 14(g), SCRFC ("[A] contempt hearing shall be an evidentiary hearing."); *Brasington v. Shannon*, 288 S.C. 183, 184, 341 S.E.2d 130, 131 (1986) ("In a proceeding for contempt for violation of a court order, the moving party must show the existence of the order and the facts establishing the respondent's noncompliance."). In the course of the contempt proceeding, the family court exercised its discretion under Rule 60(a) to correct a clerical mistake when it became apparent the parties' inclusion of the term "Roth IRA" was an oversight, determining that any other interpretation would be inequitable. Although it is unclear whether the family court concluded the agreement was ambiguous, the court noted it had the authority to resolve "this ambiguity" if the parties' intent was apparent. Nevertheless, implied in the agreement was a requirement of reasonableness, and this court must view the agreement in accordance with principles of equity. Accordingly, we find that to interpret the agreement as providing Wife 100% of an account containing a $0 balance is inequitable and unreasonable, and the family court did not err by considering extrinsic evidence to determine the parties' intent with respect to paragraph ten of the agreement.

2. We find the family court did not err by finding Husband in willful contempt of the divorce decree. *See Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) ("[T]he proper standard of review in family court matters is de novo . . . ."); *Lewis v. Lewis*, 392 S.C. 381, 388-89, 709 S.E.2d 650, 654 (2011) ("[D]e novo review neither relieves an appellant of demonstrating error nor requires [this court] to ignore the findings of the family court."); *Messer v. Messer*, 359 S.C. 614, 620, 598 S.E.2d 310, 314 (Ct. App. 2004) (noting this court is "mindful that the [family court], who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony"); *Smith-Cooper v. Cooper*, 344 S.C. 289, 300, 543 S.E.2d 271, 277 (Ct. App. 2001) ("Contempt results from the willful disobedience of a court order." (quoting *Henderson v. Henderson*, 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989))); *Poston v. Poston*, 331 S.C. 106, 113, 502 S.E.2d 86, 89 (1998) ("Civil contempt must be proven by clear and convincing evidence."); *Brasington v. Shannon*, 288 S.C. 183, 184, 341

S.E.2d 130, 131 (1986) ("The burden then shifts to the respondent to establish his defense and inability to comply with the order."). Here, the agreement was merged into the divorce decree and required Husband to satisfy Wife's personal loan and credit card debt, pay $645 for Wife's outstanding medical bills, and roll over his Roth IRA to Wife. Husband acknowledged he was required to satisfy these requirements within thirty days of February 29, 2016, and he admitted he did not do so. Husband stated he did not roll over the Roth IRA because he had done so several years prior to the divorce action and therefore believed he had already satisfied this requirement. However, Wife testified he never transferred any portion of the Roth IRA to her. Because we find the family court did not err in correcting the clerical mistake in the agreement by substituting "401(k)" for "Roth IRA," we find the evidence shows Husband knew he agreed and was required to transfer his 401(k) to Wife within thirty days of February 29, 2016. The family court found Husband provided no credible defenses for failing to complete the retirement rollover or pay Wife's medical bills or personal loan and credit card debt. We find Husband failed to comply with the foregoing requirements of the divorce decree and we defer to the family court's credibility findings. Accordingly, we find the family court did not err by finding Husband in willful contempt of the divorce decree.

3. We find the family court did not err by awarding Wife's attorney's fees without considering the parties' relative financial conditions. Under a compensatory contempt theory, the family court can award attorney's fees to reimburse the party for bringing the contempt action. *See Cheap-O's Truck Stop, Inc. v. Cloyd*, 350 S.C. 596, 609, 567 S.E.2d 514, 520 (Ct. App. 2002) ("Courts, by exercising their contempt power, can award attorney's fees under a compensatory contempt theory." (quoting *Harris-Jenkins v. Nissan Car Mart, Inc.*, 348 S.C. 171, 178, 557 S.E.2d 708, 711-12 (Ct. App. 2001)). When awarding attorney's fees as reimbursement for contempt, the court should limit the award to the party's actual loss. *See Whetstone v. Whetstone*, 309 S.C. 227, 235, 420 S.E.2d 877, 881 (Ct. App. 1992) ("Compensatory contempt is money awarded to a party who is injured by a contemnor's action to restore the party to his original position."); *id.* (holding the family court's award was proper when it awarded litigation fees and costs incurred as a result of the contempt); *Poston v. Poston*, 331 S.C. 106, 114, 502 S.E.2d 86, 90 (1998) ("[T]he award of attorney's fees is not part of the punishment; instead, this award is made to indemnify the party for expenses incurred in seeking enforcement of the court's order."); *Miller v. Miller*, 375 S.C. 443, 463, 652 S.E.2d 754, 764 (Ct. App. 2007) (noting the standard for award of attorney's fees in a domestic action is not the controlling standard for awarding fees in a contempt action); *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992)

(setting forth factors the family court should consider when deciding whether to award attorney's fees in a divorce action); *Noojin v. Noojin*, 417 S.C. 300, 318, 789 S.E.2d 769, 778 (Ct. App. 2016) ("Because we affirm the family court's overall contempt findings, we also affirm the award of attorney's fees and costs."). Here, Wife testified she incurred attorney's fees and costs totaling $2,993.15 for bringing the contempt proceeding, and the family court ordered Husband to pay that amount due to his willful contempt. On appeal, Husband acknowledges the family court's power to award attorney's fees under the theory of compensatory contempt. Because we find the family court did not err by finding Husband in willful contempt, we find the court did not err by awarding $2,993.15 in attorney's fees and costs. Further, we find the family court was not required to consider the parties' financial conditions or any other factors set forth in *E.D.M v. T.A.M.* because its award was made under a theory of compensatory contempt.

**AFFIRMED.**

**HUFF, WILLIAMS, and MCDONALD, JJ., concur.**